skip to main content

Print

# CASE INFORMATION

## CV-20-927894 LAKESSA TAYLOR vs. CITY OF EAST CLEVELAND

*Part I*

### Docket Information

| Filing Date | Docket Party | Docket Type | Docket Description | View Image |
|---|---|---|---|---|
| 04/09/2020 | D1 | SF | DEPOSIT AMOUNT PAID WILLA M HEMMONS | |
| 04/09/2020 | D1 | AN | ANSWER AND COUNTERCLAIM $75 ANSWER TO LAKESSA TAYLOR COMPLAINT WITH COUNTERCLAIM | 🗎 |
| 04/06/2020 | N/A | JE | CMC BY PHONE SET FOR 05/14/2020 AT 01:45 PM. PLAINTIFF'S COUNSEL TO INITIATE THE TELEPHONE CALL BY CONTACTING THE COURT'S STAFF ATTORNEY AT 216-443-8609 ONCE ALL PARTIES ARE ON THE LINE. NOTICE ISSUED | 🗎 |
| 04/03/2020 | N/A | JE | DEFENDANT CITY OF EAST CLEVELAND'S MOTION TO STRIKE PLAINTIFF'S OPPOSITION TO DEFENDANT'S LEAVE REQUEST, FILED 02/27/2020, IS DENIED. NOTICE ISSUED | 🗎 |
| 04/03/2020 | N/A | JE | DEFENDANT CITY OF EAST CLEVELAND'S MOTION, FILED 02/20/2020, IS GRANTED IN PART AND DENIED IN PART. DEFENDANT'S REQUEST FOR LEAVE TO FILE REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION IS GRANTED. DEFENDANT'S REPLY BRIEF IS DEEMED ACCEPTED BY THE COURT, AND IS CONSIDERED FOR PURPOSES OF RULING ON DEFENDANT'S MOTION TO DISMISS. DEFENDANT'S MOTION TO CONVERT CIV.R 12(B)(6) MOTION TO A MOTION FOR SUMMARY JUDGMENT IS DENIED. THE COURT DECLINES TO TREAT THE DEFENDANT'S REPLY BRIEF AS A MOTION FOR SUMMARY JUDGMENT AT THIS TIME. NOTICE ISSUED | 🗎 |
| 04/03/2020 | N/A | JE | DEFENDANT CITY OF EAST CLEVELAND'S MOTION TO DISMISS, FILED 02/07/2020, IS DENIED. NOTICE ISSUED | 🗎 |
| 02/28/2020 | P1 | BR | BRIEF IN OPPOSITION FILED BY P1 LAKESSA TAYLOR MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S OPPOSITION TO DEFENDANT'S REQUEST FOR LEAVE TO FILE REPLY | 🗎 |
| 02/27/2020 | D1 | MO | MOTION FILED FOR D1 CITY OF EAST CLEVELAND MOTION TO STRIKE PLAINTIFF'S OPPOSITION TO DEFENDANT'S LEAVE REQUEST 04/03/2020 - DENIED | 🗎 |
| 02/27/2020 | P1 | BR | BRIEF IN OPPOSITION FILED BY P1 LAKESSA TAYLOR MEMORANDUM IN OPPOSITION TO DEFENDANT'S REQUEST FOR LEAVE TO FILE REPLY TO PLAINTIFF'S OPPOSITION BRIEF OR IN THE ALTERNATIVE MOTION TO CONVERT DEFENDANT'S CIV. R. 12 (B)(6) MOTION TO DISMISS TO A MOTION FOR SUMMARY JUDGMENT | 🗎 |
| 02/20/2020 | D1 | MO | MOTION FILED FOR D1 CITY OF EAST CLEVELAND LEAVE TO PLEAD WITH EXHIBIT A DEFENDANT'S REPLY BRIEF OR SUMMARY JUDGMENT CONVERSION 04/03/2020 - GRANTED AND DENIED IN PART | 🗎 |
| 02/14/2020 | P1 | BR | BRIEF IN OPPOSITION FILED BY P1 LAKESSA TAYLOR PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS | 🗎 |

| 02/10/2020 | N/A | JE | DEFENDANT CITY OF EAST CLEVELAND'S MOTION TO STRIKE IMPROPER FILING, FILED 02/10/2020, IS GRANTED. DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (MOTION NO. 4845780), FILED 2/7/2020, IS HEREBY STRICKEN FROM THE DOCKET. NOTICE ISSUED | 📄 |
| 02/10/2020 | D1 | MO | MOTION FILED FOR D1 CITY OF EAST CLEVELAND DEFENDANT'S MOTION TO STRIKE IMPROPER FILING 02/10/2020 - GRANTED | 📄 |
| 02/07/2020 | D1 | MO | MOTION TO DISMISS FILED EAST CLEVELAND MOTION TO DISMISS2 04/03/2020 - DENIED | 📄 |
| 02/07/2020 | D1 | MO | MOTION TO DISMISS FILED EAST CLEVELAND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM 02/10/2020 - STRICKEN | |
| 01/29/2020 | N/A | SR | USPS RECEIPT NO. 40866187 DELIVERED BY USPS 01/21/2020 CITY OF EAST CLEVELAND PROCESSED BY COC 01/29/2020. | |
| 01/16/2020 | N/A | SR | SUMMONS E-FILE COPY COST | |
| 01/16/2020 | D1 | CS | WRIT FEE | |
| 01/16/2020 | D1 | SR | SUMS COMPLAINT(40866187) SENT BY CERTIFIED MAIL. TO: CITY OF EAST CLEVELAND 14340 EUCLID AVE EAST CLEVELAND, OH 44112 | 📄 |
| 01/15/2020 | N/A | SF | JUDGE KELLY ANN GALLAGHER ASSIGNED (RANDOM) | |
| 01/15/2020 | P1 | SF | LEGAL RESEARCH | |
| 01/15/2020 | P1 | SF | LEGAL NEWS | |
| 01/15/2020 | P1 | SF | LEGAL AID | |
| 01/15/2020 | P1 | SF | COURT SPECIAL PROJECTS FUND | |
| 01/15/2020 | P1 | SF | COMPUTER FEE | |
| 01/15/2020 | P1 | SF | CLERK'S FEE | |
| 01/15/2020 | P1 | SF | DEPOSIT AMOUNT PAID NILGES DRAHER LLC | |
| 01/15/2020 | N/A | SF | CASE FILED: COMPLAINT, SERVICE REQUEST | 📄 |

Only the official court records available from the Cuyahoga County Clerk of Courts, available in person, should be relied upon as accurate and current.
Website Questions or Comments.
Copyright © 2020 PROWARE. All Rights Reserved. 1.1.232



NAILAH K. BYRD
CUYAHOGA COUNTY CLERK OF COURTS
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

New Case Electronically Filed:
January 15, 2020 16:11

By: JEFFREY MOYLE 0084854

Confirmation Nbr. 1917351

LAKESSA TAYLOR

vs.

CITY OF EAST CLEVELAND

CV 20 927894

Judge:  KELLY ANN GALLAGHER

Pages Filed:  1

IN THE COURT OF COMMON PLEAS
Cuyahoga County          , OHIO

Lakessa Taylor

CASE NO.

Plaintiff/Petitioner

WRITTEN REQUEST FOR SERVICE
(TYPE OF PAPERS BEING SERVED)

vs.

City of East Cleveland

Defendant/Petitioner

TO THE CLERK:

PLAINTIFF/DEFENDANT REQUESTS:

☐ EXPRESS MAIL SERVICE

☑ CERTIFIED MAIL SERVICE

☐ REGULAR MAIL SERVICE

☐ PERSONAL SERVICE

☐ RESIDENCE SERVICE

☐ PROCESS SERVICE

☐ FOREIGN SHERIFF

---

LIST NAME AND ADDRESS OF PERSON(S) TO BE SERVED

---

ON:

City of East Cleveland, c/o Willa Hemmons, 14340 Euclid Ave, East Cleveland, OH 44112

Respectfully submitted,

/s/ Jeffrey J. Moyle
Jeffrey J. Moyle (0084854)
Christopher J. Lalak (0090079)
Nilges Draher, LLC.
614 West Superior Ave
Suite 1148
Cleveland, OH 44113
Telephone:    (216) 230-2955
Fax:          (330) 754-1430
E-mail:       jmoyle@ohlaborlaw.com
              clalak@ohlaborlaw.com

*Counsel for Plaintiff*



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

### Court of Common Pleas

New Case Electronically Filed:
January 15, 2020 16:11

By: JEFFREY MOYLE 0084854

Confirmation Nbr. 1917351

LAKESSA TAYLOR

vs.

CITY OF EAST CLEVELAND

CV 20 927894

Judge:  KELLY ANN GALLAGHER

Pages Filed:  9

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| LAKESSA TAYLOR | ) | |
| | ) | CASE NO. |
| Plaintiff, | ) | |
| | ) | JUDGE |
| v. | ) | |
| | ) | **COMPLAINT** |
| CITY OF EAST CLEVELAND | ) | |
| | ) | **JURY DEMAND ENDORSED HEREON** |
| Defendant. | ) | |
| | ) | |

Plaintiff Lakessa Taylor ("Plaintiff"), by and through undersigned counsel, brings this Complaint against Defendant City of East Cleveland ("Defendant") and alleges as follows:

## PARTIES

1. Plaintiff is an adult individual residing in Cuyahoga County, Ohio.

2. Defendant is an Ohio municipal corporation located in Cuyahoga County. Defendant may be served with this Complaint via its Law Director, Willa Hemmons, at 14340 Euclid Avenue, East Cleveland, Ohio 44112.

3. Plaintiff was employed by Defendant as a Police Officer from 2011 until her termination in or around August, 2018.

4. At all times material to this Complaint, Defendant was an "employer" as that term is defined in R.C. 4112.01.

5. At all times material to this Complaint, Plaintiff was an employee of Defendant within the meaning of R.C. 4112.01.

6. Venue is proper in this Court insofar as Defendant resides in Cuyahoga County and all or part of Plaintiff's claims for relief arose in Cuyahoga County.

## STATEMENT OF FACTS

7.    Since Plaintiff's hiring in 2011 as an officer in the East Cleveland Police Department ("ECPD"), Plaintiff was repeatedly subjected to discriminatory behavior on the basis of her gender.

8.    For example, although ECPD's male police officers are typically permitted to conduct patrols on their own after six months, Plaintiff was told that it was "too dangerous" for her to do patrols on her own.

9.    Plaintiff was also not given the same opportunities to advance her career as male police officers were.  For instance, Plaintiff tried on several occasions to apply for a position in the ECPD Detective Bureau, but her applications were always rejected in favor of male candidates with less experience and qualifications.

10.    When Plaintiff asked why she was not selected over less qualified male candidates, she was told that she was not a "good fit" for a detective position, and that she was better working with children as a School Resource Officer, which is where Defendant assigned most of its female police officers.

11.    During her employment with ECPD, Plaintiff was also subjected to harassing behavior on the basis of her gender.

12.    Indeed, other male police officers repeatedly referred to women as "whores" and bragged about their sexual experiences with women.

13.    At an ECPD holiday party, Officer Michael Cardilli, who later became ECPD's Chief of Police, became intoxicated and attempted to force Plaintiff into his car.

14.    Another female officer intervened and escorted Plaintiff to her car, but Cardilli blocked the officer's car and attempted to physically remove Plaintiff from the car, telling her that he wanted to take her to a hotel room.

15.    The events leading to Plaintiff's termination began in early 2018.  Officer Larry McDonald, who was formerly ECPD's head School Resource Officer, left ECPD to join the City of Cleveland Police Department.  After Officer McDonald left ECPD, Plaintiff took his place as the head School Resource Officer.

16.    Officer McDonald later returned to ECPD and was reassigned to work in the East Cleveland schools. Upon his return to ECPD, Officer McDonald made it clear that he was not going to work under a female officer's (*i.e.*, Plaintiff's) direction, so he began to denigrate Plaintiff to officials and administrators in the East Cleveland schools.

17.    Plaintiff approached Police Chief Cardilli to complain about Officer McDonald's harassing behavior, but Chief Cardilli's response was that the Police Department was a "boys club" and that Officer McDonald knew more about the schools, so Plaintiff should just "deal with it."

18.    Notably, Chief Cardilli has publicly referred to Officer McDonald, who was later promoted to Sergeant, as his "right-hand man."[1]

19.    Less than a month after complaining to Chief Cardilli about his "right-hand man," Plaintiff, who had an exemplary record of service with ECPD, was fired.

20.    The purported reason for Plaintiff's termination was insubordination, because she refused to obey an order given to her by Officer McDonald – who had no authority to order Plaintiff to do anything.

---

[1] *See* https://www.cleveland.com/news/2019/10/down-but-not-out-how-east-clevelanders-arent-giving-up-on-ohios-poorest-city.html, Published October 6, 2019.

21.     No investigation was conducted into the circumstances surrounding the alleged act of insubordination. Instead, Plaintiff was immediately terminated.

22.     Other male officers have engaged in far more egregious conduct, but have not lost their jobs as a result.

23.     For example, in December 2017, a male police officer, Joseph Marche, was found highly intoxicated and passed out in Bratenahl, Ohio in an unmarked East Cleveland police car while on duty for ECPD.

24.     When he was found, Officer Marche refused to exit his vehicle, and Bratenahl police had to break out two windows in the ECPD vehicle and forcibly remove Officer Marche from the vehicle. Officer Marche, who was found to have a loaded firearm on him at the time of his arrest, was later convicted of operating a vehicle under the influence and had his driver's license suspended.

25.     Despite being intoxicated on the job while carrying a weapon, refusing to exit ECPD's unmarked police car and causing damage to it, and later being convicted of OVI and having his driver's license suspended, Defendant did not terminate Officer Marche's employment.

26.     Instead, after Sergeant Scott Gardner conducted an extensive investigation, which included consulting with *four other police departments* for advice, ECPD decided instead to suspend Officer Marche without pay.[2]

---

[2] *See* https://www.news5cleveland.com/news/local-news/east-cle-officer-found-intoxicated-while-on-the-job-city-leaders-question-accountability, published on September 4, 2018.

27.     Likewise, in October, 2019, a complaint was filed against Chief Cardilli's "right-hand man" Sergeant McDonald by a woman who alleged that Sgt. McDonald released her from jail after she said she would go on a date with him.[3]

28.     Sgt McDonald was not immediately terminated without investigation like Plaintiff was. Instead, he remained on duty while an investigation was conducted and, upon information and belief, continues to be employed by ECPD to this day.

29.     These incidents (and others) demonstrate that when a male officer engages in misconduct, Defendant conducts extensive investigations that typically result in lenient punishment, regardless of the severity of the misconduct. On the other hand, when a female officer like Plaintiff is alleged to have engaged in misconduct, no investigation is conducted and she is immediately terminated.

<div align="center">

**COUNT I**
**(Gender Discrimination in Violation of R.C. 4112.02)**

</div>

30.     Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

31.     At the time of her termination, Plaintiff was, and continues to be, qualified for the position of Police Officer.

32.     Defendant unlawfully discriminated against Plaintiff with respect to the terms, conditions and privileges of her employment because of her gender. These discriminatory acts include, but are not limited to, treating similarly situated male employees more favorably than her; refusing to promote Plaintiff; terminating Plaintiff's employment; and refusing to transfer, re-

---

[3] *See* https://www.cleveland.com/metro/2019/12/it-wasnt-right-woman-says-east-cleveland-police-sergeant-released-her-from-jail-in-return-for-a-date.html, published on December 8, 2019.

assign or rehire Plaintiff to her former position or to other open positions for which she was qualified.

33.    Defendant's actions and inaction, as described herein, constitutes gender discrimination in violation of R.C. 4112.02.

34.    By virtue of Defendant's violation(s) of R.C. 4112.02, Defendant is subject to a civil action for damages, injunctive relief, and any other appropriate relief pursuant to R.C. 4112.99.

35.    As a direct and proximate result of Defendant's violation of R.C. 4112.02, Plaintiff has suffered and will continue to suffer damages.

36.    Defendant's discriminatory actions against Plaintiff were intentional, willful, reckless, and/or malicious, and render Defendant liable for past and future economic and non-economic compensatory and punitive damages, as well as reasonable attorneys' fees, costs, expenses, and any equitable relief that this Court deems appropriate pursuant to R.C. 4112.99.

<u>COUNT II</u>
**(Retaliation in Violation of R.C. 4112.02)**

37.    Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

38.    Plaintiff engaged in protected activity when she complained about and opposed Defendant's discriminatory conduct, as set forth herein.

39.    Defendant unlawfully retaliated against Plaintiff by terminating her employment because she engaged in protected activity.

40.    Defendant's actions and inaction, as described herein, constitutes retaliation in violation of R.C. 4112.02.

41.     By virtue of Defendant's violation(s) of R.C. 4112.02, Defendant is subject to a civil action for damages, injunctive relief, and any other appropriate relief pursuant to R.C. 4112.99.

42.     As a direct and proximate result of Defendant's violation of R.C. 4112.02, Plaintiff has suffered and will continue to suffer damages.

43.     Defendant's retaliatory actions against Plaintiff were intentional, willful, reckless, and/or malicious, and render Defendant liable for past and future economic and non-economic compensatory and punitive damages, as well as reasonable attorneys' fees, costs, expenses, and any equitable relief that this Court deems appropriate pursuant to R.C. 4112.99.

<u>COUNT III</u>
**(Hostile Work Environment Based on Gender in Violation of R.C. Chapter 4112)**

44.     Plaintiff restates each of the previous paragraphs of this Complaint as if fully rewritten herein.

45.     During her employment, Plaintiff suffered harassment that was unwelcome.

46.     The harassment of Plaintiff was based on her sex.

47.     The harassing conduct Plaintiff suffered was sufficiently severe or pervasive to affect the terms, conditions, and privileges of her employment with Defendant.

48.     The harassment was committed by one or more of Defendant's supervisors.

49.     Defendant, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action.

50.     Defendant's actions and inaction, as described herein, constitute a hostile work environment based on sex in violation of R.C. 4112.02.

51.     Plaintiff has suffered and will continue to suffer damages as a result of Defendant's violation of R.C. 4112.02.

52.    By virtue of Defendant's violation(s) of R.C. 4112.02, Defendant is subject to a civil action for damages, injunctive relief, and any other appropriate relief pursuant to R.C. 4112.99.

53.    Defendant's actions against Plaintiff were intentional, willful, reckless, and/or malicious, and render Defendant liable for past and future economic and non-economic compensatory and punitive damages, as well as reasonable attorneys' fees, costs, expenses, and any equitable relief that this Court deems appropriate pursuant to R.C. 4112.99.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

1.    Awarding Plaintiff economic and non-economic compensatory damages and punitive damages in an amount in excess of $25,000 for Defendant's violations of R.C 4112.02.

2.    Awarding Plaintiff her reasonable costs and attorneys' fees necessarily incurred herein; and

3.    Awarding Plaintiff such other and further relief as the Court deems just and proper.

Electronically Filed 01/15/2020 16:11 / / CV 20 927894 / Confirmation Nbr. 1917351 / CLSLP

Respectfully submitted,

**NILGES DRAHER LLC**

*/s/ Jeffrey J. Moyle*
Jeffrey J. Moyle (0084854)
Christopher J. Lalak (0090079)
614 West Superior Avenue
Suite 1148
Cleveland, Ohio 44113
Telephone:    216.230.2955
Email:          jmoyle@ohlaborlaw.com
                 clalak@ohlaborlaw.com

*Counsel for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.

*/s/ Jeffrey J. Moyle*
Jeffrey J. Moyle

*Counsel for Plaintiff*

THE COURT OF COMMON PLEAS CUYAHOGA COUNTY JUSTICE CENTER
CLEVELAND, OHIO 44113

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV20927894 | D1 CM | 40866187 |

Rule 4 (B) Ohio

Rules of Civil
Procedure

LAKESSA TAYLOR **PLAINTIFF**
VS
CITY OF EAST CLEVELAND **DEFENDANT**

## SUMMONS

CITY OF EAST CLEVELAND
14340 EUCLID AVE.
EAST CLEVELAND OH 44112

You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

Said answer is required to be served on:



Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

Plaintiff's Attorney

JEFFREY MOYLE
614 WEST SUPERIOR AVE.

SUITE 1148
CLEVELAND, OH 44113-0000

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

Case has been assigned to Judge:

KELLY ANN GALLAGHER
Do not contact judge. Judge's name is given for attorney's reference only.



**NAILAH K. BYRD**
Clerk of the Court of Common Pleas

| DATE SENT |
|---|
| Jan 16, 2020 |

By_____
Deputy

COMPLAINT FILED   01/15/2020

CMSN130

**UNITED STATES**
**POSTAL SERVICE**.

Date Produced: 01/27/2020

CERTIFIED MAIL SOLUTIONS INC.:

The following is the delivery information for Certified Mail™/RRE item number 9314 8001 1300 3539 9925 96. Our records indicate that this item was delivered on 01/21/2020 at 02:29 p.m. in CLEVELAND, OH 44112. The scanned image of the recipient information is provided below.

Signature of Recipient :  *Maxine Eberhart*
*MAXINE EBERHART*

Address of Recipient :  *14340 EVCI,/*

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number: CITY OF EAST CLEVELAND / 2020-7894
Sent To:  14340 EUCLID AVE  EAST CLEVELAND, OH 44112

Motion No.  4845866



NAILAH K. BYRD
CUYAHOGA COUNTY CLERK OF COURTS
1200 Ontario Street
Cleveland, Ohio 44113

Court of Common Pleas

MOTION TO DISMISS
February 7, 2020 19:26

By: WILLA M. HEMMONS 0041790

Confirmation Nbr. 1938445

LAKESSA TAYLOR                             CV 20 927894

vs.

CITY OF EAST CLEVELAND          Judge:  KELLY ANN GALLAGHER

Pages Filed:  63

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

LAKESSA TAYLOR,                )   CASE NO.: CV-20-927894
                              )
            Plaintiff,         )   JUDGE KELLY ANN GALLAGHER
                              )
    v.                        )
                              )
CITY OF EAST CLEVELAND,        )   MOTION TO DISMISS
                              )   FOR FAILURE TO STATE
            Defendant.         )   A CLAIM 2

NOW Comes Defendant, the City of East Cleveland, by and through its undersigned

attorney of record, and pursuant to Civ.P. 12(b)(6) hereby respectfully moves this honorable

Court to issue an Order dismissing Plaintiff Lakessa Taylor's (Lakessa Taylor) Complaint with

prejudice.

As more fully set forth in the *Brief in Support*, attached hereto and incorporated herein by

reference, as it appears beyond doubt that Lakessa Taylor can prove no set of facts which would

entitle her to relief. Consequently, as her Complaint fails to state a claim upon which relief can

be granted; this Court should issue an Order dismissing Lakessa Taylor's Complaint with

prejudice.

                              Respectfully submitted,


                              /s/ *Willa M. Hemmons*
                              Willa M. Hemmons (0041790)
                              Director of Law
                              City of East Cleveland
                              14340 Euclid Avenue
                              East Cleveland, Ohio 44112
                              whemmons@eastcleveland.org
                              Counsel for Defendant, City of East Cleveland

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| LAKESSA TAYLOR, | ) | CASE NO.: CV-20-927894 |
| | ) | |
| Plaintiff, | ) | JUDGE KELLY ANN GALLAGHER |
| | ) | |
| v, | ) | |
| | ) | |
| CITY OF EAST CLEVELAND, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO
DISMISS FOR FAILURE TO STATE A CLAIM 2

I.    INTRODUCTION.

Lakessa Taylor was employed as a police officer with the City of East Cleveland (the City) beginning in 2011 until her resignation in 2018. Two years after her resignation; and indeed despite having entered into a Settlement Agreement and Release, Lakessa Taylor has brought a three-Count Complaint against the City of East Cleveland alleging Gender Discrimination in Violation of R.C. 4112.02 (Count I), Retaliation in Violation of R.C. 4112.02 (Count II) and Hostile Work Environment Based on Gender in Violation of R.C. Chapter 4112 (Count III).

The City is entitled to dismissal of each of her claims because her Complaint fails to plead facts beyond a formulaic recitation of the elements of each of her claims. Indeed, Lakessa Taylor's allegations against the City are largely conclusory assertions of misconduct and liability and even when buoyed by the factual allegations asserted in her Complaint her claims fail to identify any wrongdoing on the part of the City.

Accordingly, the City is entitled to an Order dismissing Lakessa Taylor's claims with prejudice.

## STATEMENT OF FACTS

From the onset this Court is urged to find that historically the City of East Cleveland has served as a wealth of opportunity for women who desire a career in law enforcement. Indeed, this Court is urged to recognize that at least as early as when the City hired Patricia in 1985, it supported females within its law enforcement ranks. Not only did the City of East Cleveland hire female police officers, but in 199, Patricia Lane was promoted to Chief of Police; and was celebrated as the first black female police chief in the State of Ohio, Exh. A. and recognized as the second black female police chief nationwide.

1.      The City of East Cleveland, historically and continuously has a record of hiring and promoting female officers, Exh. B.

2.      Due to failing to meet the Civil Service requirements, Lakessa Taylor required Affirmative Action to be hired *ab initio*, Exh. C.

3.      Despite such her initial eligibility failure, Lakessa Taylor began her career with the City of East Cleveland on November 28, 2011 under a special COPS Grant, Exh. D; receiving promotions from that date forward. On Nov. 28, 2012, Ms. Taylor was promoted from 3rd Grade Patrolman to 2nd Grade Patrolman. On Nov. 28, 2013, she was promoted from 2nd Grade Patrolman to 1st Grade Patrolman, Exh. E.

4.      Lakessa Taylor's progress and fitness was recorded in annual fitness reports which reflected that she was a marginally effective police officer as she received an average score of 70.56, Exh. F.

5.      At the same time as Lakessa Taylor was with the City, her more qualified female East Cleveland cohort had promoted rank or received promotions. For instance, Paula Robinson, Torris More and Anessa Booker were sergeants. Yashila Crowell, Deandre Brown and Shanika Armstead, Ms. Taylor's colleagues, became detectives..

6. During Ms. Taylor's tenure with East Cleveland, she had a history of recalcitrance and insubordination which compromised her ability to get the same promotions as her female corollaries. Exh. G.

7. On or about 6/27/18, Lakessa Taylor received an Order from Sergeant Larry McDonald commanding her to report to University Hospitals, to guard a prisoner.

8. Despite the fact that the Order was lawful and ethical, Lakessa Taylor without excuse refused to comply with Sgt. McDonald's Order.

9. On or about that dayte of 6/27/18 at approximately 900 hours, Lakess Taylor was summoned to the office of Commander Scott Gardner who was the second in command below Chief Cardilli for the East Cleveland Police Department.

10. Upon her arrival at Commander Scott Gardner's office; and after a brief discussion regarding her reasons for refusing Sgt. McDonald's Order, Commander Scott Gardner having found the Order to be lawful and ethical then issued to Lakessa Taylor the same Order directing her to immediately respond to University Hospitals for guard duty.

11. Lakessa Taylor again refused the Order; and thereupon, in compliance with the Rules and Regulations of the East Cleveland Police Department, Commander Gardner suspended Lakessa Taylor requiring her to immediately surrender her badge and her weapon. Exh. H.

12. Lakessa Taylor then filed a grievance which was heard before an Arbitrator on or about April 5, 2019.

13. During the conduct of the Arbitration Hearing, the parties entered into a Settlement Agreement and Release in which Lakessa Taylor agreed to a resolution of her Grievance in the amount of $5,000, Exh. I.

14.   Despite Lakessa Taylor's representations, of an involuntary termination, the
parties agreed that her separation from East Cleveland, in light of her abject refusal to follow
orders, would be a "Resignation in good standing." Id. Exh. I.

15.   **ARGUMENT AND AUTHORITIES REQUIRING DISMISSAL.**

A.   **Applicable Legal Standards.**

1.   **The standard for dismissal under Rule 12(b)(6): does the complaint
      state a valid claim for relief?**

Rule 12(b)(6) provides for dismissal of a claim if the complaint fails to state a claim upon
which relief can be granted. *Mills v. Deehr*, 2004-Ohio-2338, 82799, 04-LW-2000 (8th)
(OHCA8). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims
stated in the complaint, and such a motion must be evaluated solely on the basis of the pleadings.
*Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986); see also, *Morin v. Caire*, 77 F.3d 116,
120 (5th Cir. 1996).

There are two primary considerations for a court's analysis of the propriety of a motion to
dismiss under Rule 12(b)(6). First, the allegations contained in the complaint are to be construed
in the plaintiff's favor and all well-pleaded facts are to be accepted as true. *In re Katrina Canal
Bridges Breaches, Litig.*, 495 F.3d 191, 205 (5th Cir. 2007), citing *Martin K. Eby Constr. Co. v.
Dallas Area Rapid Transit*, 369 F.3d 191, 205 (5th Cir. 2004). However, conclusory statements
in a complaint are not to be accorded a presumption of truth. *Kaiser Alum. & Chem. Sales, Inc. v.
Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982); *Washington*, 953 F. Supp. at 768.
Therefore, conclusory allegations and legal conclusions masquerading as factual assertions are
not adequate to prevent dismissal for failure to state a claim. *Fernandez-Montes v. Allied Pilots
Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). Second, the Supreme Court held in *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544 (2007), that the factual allegations in a complaint must be specific

enough to raise a right to relief above the speculative level on the assumption that all of the allegations are true. *Twombly*, 550 U.S. 570. That is, it is no longer sufficient that relief could be granted under some theoretical set of facts consistent with a complaint's allegations, which was the familiar standard the Supreme Court established in Conley. Rather, under *Twombly*, plaintiffs must "nudge their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Therefore, to survive a motion to dismiss made pursuant to Rule 12, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." Id. The plausibility standard applies to all of Plaintiff's claims.

**2.    A complaint must state sufficient non-conclusory facts to permit the reasonable inference that the defendant is liable.**

The Supreme Court clarified the scope and application of *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Iqbal* makes clear that the *Twombly* decision was based upon the Supreme Court's interpretation and application of Rule 8, which "governs the pleading standard 'in all civil actions and proceedings in the United States district courts.'" Iqbal, 556 U.S. at 684 (citing *Twombly*, 550 U.S. at 554 and applying FED. R. CIV. P. 1). Therefore, *Twombly's* (and *Iqbal's*) requirements apply to Lakessa Taylor's allegations against the City in this case.

The legal foundation of this motion is set out in section IV-A of the opinion of the Court in *Iqbal*. In summary, *Iqbal* held that the following standards apply when evaluating the sufficiency of all federal complaints: • The Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). • A complaint must be plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing *Twombly*, 550 U.S.at 556). • "A pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (citing

*Twombly*, 550 U.S. at 555). • A complaint is insufficient if it merely tenders "'naked assertion[s]'

devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at

557). The *Iqbal* Court stated that its decision in *Twombly* was supported by two principles, from

which the foregoing standards were derived. "First, the tenet that a court must accept as true all

of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S.

at 678. Thus, and critically, "[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S.

at 555). Second, "where the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the

pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (applying FED. R. CIV. P. 8(a)(2) (requiring

"a short and plain statement of the claim showing the pleader is entitled to relief[.]"). Thus, *Iqbal*

directs that a district court considering a motion to dismiss "can choose to begin by identifying

pleadings that, because they are no more than conclusions, are not entitled to the assumption of

truth." *Iqbal*, 556 U.S. at 679. Such conclusions are not "well-pleaded" factual allegations, and

do not give rise to a plausible claim to relief.

    B.    **Lakessa Taylor's Gender Discrimination Claims Lack Merit and Should Be
Dismissed.**

    In her Complaint, Lakessa Taylor attempts to assert three claims against the City for

gender discrimination in violation of R.C. 4112.02.

    To assert a claim of gender discrimination under R.C. 4112.02, a plaintiff must

demonstrate that: (1) she was a member of a protected class; (2) she was qualified for the

position; (3) she suffered an adverse employment action; and (4) after her adverse employment

action, she was replaced by someone not a member of the protected class or that others similarly

situated and outside of the protected class were more favorably treated. Urbano v. Cont'l Airlines Inc., 138 F.3d 204, 206 (5th Cir. 1998), Bauer v. Albemarle Corp., 169 F.3d 962, 966 (5th Cir. 1999).

## I. LAKESSA TAYLOR'S FIRST CLAIM MUST FAIL

### Gender Discrimination in Violation of R.C. 4112.02 (Count I)

As stated heretofore, from the outset, Lakessa Taylor was not qualified for the position of police officer. And, although she was given every opportunity to succeed as a Patrol Officer, she was her own worst enemy in that endeavor. She continuously exhibited an attitude that was resistant to training and constructive intervention. This oppositional attitude culminated in her taking herself out of East Cleveland's employ.

In her first claim, Lakessa Taylor asserts that she was "repeatedly subjected to discriminatory behavior on the basis of her gender." See Plaintiffs' Complaint at ¶ 7.

"Under Ohio law, an employer may not ... otherwise discriminate against an individual with respect to hire, tenure, terms, conditions or privileges of employment 'because of the ...sex ....of that person.'" *Burns v. Ohio State Univ. College of Veterinary Med.*, 10th Dist. Franklin No. 13AP-633, 2014-Ohio-1190, ¶ 6, quoting R.C. 4112.02(A).

"To prevail in an employment discrimination case, a plaintiff must prove discriminatory intent' and may establish such intent through either direct or indirect methods of proof." *Dautartas v. Abbott Labs.*, 10th Dist. Franklin No. 11AP-706, 2012-Ohio-1709, ¶ 25, quoting *Ricker v John Deere Ins. Co.*, 133 Ohio App.3d 759, 766 (10th Dist. 1998).

{¶15} "Direct evidence of discrimination is evidence of any nature, which if believed, is sufficient by itself to show the employer more likely than not was motivated by discriminatory animus in its action." *Smith v. Superior Production, LLC*, 10th Dist. Franklin No. 13AP-690, 2014-Ohio-1961, ¶ 16.

As evidence of gender discrimination, Lakessa Taylor points to only one isolated instance of alleged discriminatory behavior as she alleges that, "...although ECPD's male police officers are typically permitted to conduct patrols on their own after six months, [she] was told that it was 'too dangerous' for her to do patrols on her own." Id. at ¶ 8

{¶17} "In the absence of direct evidence, discrimination claims are subject to a version of the burden shifting analysis set forth by the United States Supreme Court *in McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). * * * Under *McDonnell Douglas,* a plaintiff must first present evidence from which a reasonable jury could conclude that there exists a prima facie case of discrimination." *Turner v. Shahed Ents.,* 10th Dist. Franklin No. 10AP-892, 2011-Ohio-4654, ¶ 11-12. Under this approach, "a plaintiff must prove by a preponderance of the evidence that (1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position in question; and (4) comparable, nonprotected persons were treated more favorably." *Refaei v. Ohio State Univ. Hosp.,* 10th Dist. Franklin No. 10AP-1193, 2011-Ohio-6727, ¶ 12. Here, members of her own female cohort were treated more favorably because they performed more favorably.

## II.   LAKESSA TAYLOR'S SECOND CLAIM MUST FAIL

In her second cause of action claiming gender discrimination Lakessa Taylor claims, "Plaintiff was also not given the same opportunities to advance her career as male police officers were. For instance, Plaintiff tried on several occasions to apply for a position in the ECPD Detective Bureau, but her applications were always rejected in favor of male candidates with less experience and qualifications." Id. at ¶ 9. And, although in her Complaint at ¶31, Ms. Taylor complains that she was "qualified," what she fails to note is that here applications were rejected not only in favor of other males, but in favor of more qualified female candidates also in her competitive range.

Furthering this claim, Lakessa Taylor alleges that, "[w]hen Plaintiff asked why she was not selected over less qualified male candidates, she was told that she was not a 'good fit' for a detective position, and that she was better working with children as a School Resource Officer, which is where Defendant assigned most of its female police officers.'" Id. at ¶ 10.  Given Ms. Taylor's abysmal job performance rating, she was fortunate that East Cleveland found a place for her at all on the police force.

### Retaliation in Violation of R.C. 4112.02 (Count II).

To assert a claim of retaliation under Title VII, a plaintiff must demonstrate that she: (1) engaged in an activity protected by Title VII; (2) the employer took an adverse employment action against the employee; and (3) there is a causal connection between the protected activity and the adverse employment action. *Brazoria County, Tex. v. EEOC*, 391 F.3d 685, 692 (5th Cir. 2004).

Throughout the entirety of Lakessa Taylor's pleadings, she only alleges that she engaged in one (1) activity even arguably protected under Title VII, and this was her alleged complaint about Sgt. McDonald's comments to "...officials and administrators in the East Cleveland schools." Id. at ¶ 16 .

Consistent with the statutory language, protected activities under Title VII fall into two categories—opposition and participation. Douglas v. DynMcDermott Petroleum Operations Co., 144 F.3d 364, 372 (5th Cir. 1998).

An employee has engaged in protected activity when she has (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a) (emphasis added); see also *Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996).

Lakessa Taylor does not allege that she participated in any investigations, proceedings or hearings under Title VII during her employment with the City. Thus, to the extent that Lakessa Taylor is attempting to assert a retaliation claim under Title VII through her engagement in a protected activity by making a charge, testifying, assisting, or participating in an investigation, proceeding or hearing under Title VII, such claim should be dismissed.

With respect to the opposition clause, in order for an employee's complaint to a supervisor to constitute protected activity necessary to establish a prima facie case of retaliation under the opposition clause of § 2000e-3(a), the complaint must concern, and be in opposition to, conduct made unlawful by Title VII. *Watkins v. Tex. Dep't of Criminal Justice*, No. 06-20843, 2008 WL 686571, at *3 (5th Cir. Mar. 12, 2008) (stating that plaintiff's belief that he was "treated unfairly because of critical comments he made to the media in January 2000 concerning prison underfunding and staff shortages .... are not protected activity under Title VII, and therefore cannot serve as grounds for a Title VII retaliation action"); *Marquez v. Voicestream Wireless Corp.*, 115 Fed. Appx. 699, 702-03 (5th Cir. Nov. 24, 2004) (per curiam) (finding that plaintiff failed to establish that she engaged in a protected activity when she informed an office manager that her supervisor had invited her to go out for a drink on two occasions, but there was no evidence that "she protested or objected that these invitations were sexual harassment or otherwise unwelcomed," and "[w]ithout an allegation that she reported unlawful activity ... [plaintiff's] conversations with [the office manager] were not protected activity").

Reports of misconduct or unfair treatment do not equate to engaging in an activity protected under Title VII. See, e.g., *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348-49 (finding the employee's request to her supervisor to refrain from saying "ghetto children" and a complaint of poor treatment over a disputed project did not qualify as protected activities because the employee could not have reasonably believed that the statement and poor treatment

were unlawful employment practices). And, complaining about something that is not an unlawful employment practice is simply insufficient. *Rose v. Upshur County*, No. 6:11cv263, 2012 WL 2088663, at *3 (E.D. Tex. June 8, 2012) (no retaliation claim where plaintiff complained about other employees who had made comments of a sexual nature about his wife).

Lakessa Taylor's pleadings fail to establish that she opposed any "unlawful" employment practices, and therefore dismissal of her retaliation claims is appropriate. Lakessa Taylor's retaliation claims should also be dismissed because her pleadings fail to establish a causal connection between any protected activity and any adverse employment action she may have suffered.

The Fifth Circuit has consistently held that "an employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (quoting *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)). Therefore, the only adverse employment action that Lakessa Taylor is alleged to have suffered during her employment with the City of East Cleveland was her termination in September of 2017.

Lakessa Taylor's retaliation claims cannot survive dismissal because there is no evidence of any causal connection between a protected activity and her separation. Even if one were to consider Lakessa Taylor's never before made allegations as to the Police Chief's undated activity towards her, they are suspect. This is true given the fact that the City never had any notice of such allegations regarding the Police Chief. They seem to be thrown in for good measure to embellish and enhance her otherwise unfounded allegations. In order to support an inference of causation, the proximity between her report and an adverse employment action must be "very close", and there simply is no evidence of any close temporal proximity. See *Clark Cty. Sch. Dist v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). Therefore, because

Lakessa Taylor failed to establish a causal link between any alleged protected activity and her adverse employment action, the dismissal of Lakessa Taylor's retaliation claims is appropriate. Hence, Lakessa Taylor's claims for retaliation are without merit and should be dismissed.

### III.  LAKESSA TAYLOR'S THIRD CLAIM MUST FAIL

**Lakessa Taylor's claims for sexual harassment and sexually hostile work environment are without merit and should be dismissed. (Count III)**

In her third claim of gender discrimination, Lakessa Taylor alleges that, "...Officer Larry McDonald, who was formerly ECPD's head School Resource Officer, left ECPD to join the City of Cleveland Police Department. After Officer McDonald left ECPD, Plaintiff took his place as the head School Resource Officer. Id. at ¶ 15.

"Officer McDonald later returned to ECPD and was reassigned to work in the East Cleveland schools. Upon his return to ECPD, Officer McDonald made it clear that he was not going to work under a female officer's (i.e., Plaintiff's) direction, so he began to denigrate Plaintiff to officials and administrators in the East Cleveland schools." Id. at ¶ 16.

Lakessa Taylor gender discrimination claim fails due to her failure to plead that she was either replaced by someone not a member of the protected class or that others similarly situated and outside of the protected class were more favorably treated. Indeed, a female officer, Dominique King, was favored over her as Ms. King was viewed more capable in administering the School Resource Officer duties. Ms. King was assigned to the high school and Ms. Taylor to the middle school.

Since Lakessa Taylor fails to mention the gender of the employee that replaced her, it is assumed that she is attempting to establish that other, similarly situated employees outside of her protected class were more favorably treated. However, the circumstances of the allegedly similarly situated individuals must be "nearly identical." *Wheeler v. BL Dev.*, 415 F.3d 399, 406

(5th Cir. 2005); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995). Lakessa Taylor apparently attempts to satisfy her burden by mentioning a male officer only and ignoring the female officers who were likewise similarly situated.

The information provided by Lakessa Taylor regarding these individuals does not describe what options (if any) these employees were provided as alternative to involuntary termination, nor does she provide enough well pleaded facts to establish how these situations could possibly be "nearly identical" and/or how she was treated differently.

Although Lakessa Taylor claims that her separation was involuntary, Lakessa Taylor's pleadings are noticeably silent on the issue of whether or not the City also provided her with the option to resign or retire (if eligible) and she did indeed avail herself of that option. In fact, one such complaint she made in 2014 was largely unsubstantiated, Exh. J, and in her Complaint she made no connection of her former claim to her 2018 one. Therefore, dismissal of Lakessa Taylor's gender discrimination claim is appropriate for failure to state a claim upon which relief may be granted.

At Count III of her Complaint, Lakessa Taylor attempts to assert claims against the City for sexual harassment and sexually hostile work environment in violation of Ohio Revised Code Chapter 4112.

R.C. 4112.02 provides that, "[i]t shall be an unlawful discriminatory practice: (A) For any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." See R.C. 4112.02

Ohio courts have held that hostile environment sexual harassment claims are actionable as a violation of the above statute. See, *Cerett v. Timken Co.*, 2006-Ohio-5892, 2006CA00056

(OHCA5), ¶16 ref. *Scandinavian Health Spa v. Civil Rights Comm.* (1990), <u>64 Ohio App.3d 480</u>, 489.

To establish a *prima facie* case of hostile environment sexual harassment under R.C. 4112, a party must establish that: (1) he/she is a member of a protected class; (2) he/she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (3) the harassment complained of was based upon sex; (4) the charged sexual harassment had the effect of unreasonably interfering with the party's work performance and creating an intimidating, hostile or offensive working environment that affect seriously the psychological well-being of the party; and (5) the existence of respondeat superior liability. *Id. See also: Highlander v. K.F.C. Nat'l Management Co.* (C.A. 6, 1986), 805 F.2d 644, 649; *Rabidue v. Osceala Refining Co.* (C.A. 6, 1986), 805 F.2d 611; *Henson v. Dundee* (C.A. 11, 1982), 682 F.2d 897

In fully parsing the fourth requisite it is apparent that Taylor was required to plead and meet three conjunctive allegations:  (a) the charged sexual harassment had the effect of unreasonably interfering with the party's work performance; (b) creating an intimidating, hostile or offensive working environment that; (c) affect seriously the psychological well-being of the party.

Critically, the sub-requisites at (a) and (c) are unpled, as an examination of Taylor's Complaint fails to reveal any allegation that tangentially supports the requisite that the complained of harassment seriously affected Taylor's psychological well-being.

Ohio, in considering violations of such statute, follows Federal regulations and cases concerning claims of violations of Title VII of the Civil Rights Act of 1964, as amended. *Little Forest Med. Ctr. V. Ohio Civ. Rights Comm.* (1991), <u>61 Ohio St.3d 607</u>.

The United States Supreme Court has stated that a "plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment. *Meritor Savings Bank, FSB, Petitioner vs. Mechelle Vison, et al.* (1986), <u>477 U.S. 56, 1206 S.Ct. 2399</u>.

"For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment." Id..

Also, "(1) to be actionable under Title VII as 'abusive work environment' harassment, the conduct need not seriously affect an employee's psychological well-being or lead the employee to suffer injury; (2) the *Meritor* standard requires an objectively hostile or abusive environment as well as the victim's subjective perception that the environment is abusive; and (3) whether an environment is sufficiently hostile or abusive to be actionable requires consideration of all the circumstances, not any one factor." *Harris v. Forklift Systems, Inc.* (1993), <u>510 U.S. 17</u>.

Again, in *Faragher v. City of Boca Raton* (1998), <u>524 U.S. 775</u>, the United States Supreme Court stated:

"(I)n order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. *Harris v. Forklift Systems, Inc.* (1993), 510 U.S., at 21-22, 114 S.Ct., at 370-371. We directed courts to determine whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances', including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*, at 23, 114.S.Ct., at 371."

Federal regulations provide in C.F.R. §1604.11:

"(a) Harassment on the basis of sex is a violation of section 703 of title VII. Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

"(b) In determining whether alleged conduct constitutes sexual harassment, the Commission will look at the record as a whole and at the totality of the circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred. The determination of the legality of a particular action will be made from the facts, on a case by case basis.

{¶32} "(d) With respect to conduct between fellow employees, an employer is responsible for acts of sexual harassment in the workplace where the employer (or its agents or supervisory employees) knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action.

Lakessa Taylor's avenue of relief for a sexual harassment claim presents under a hostile work environment theory. A plaintiff in a hostile work environment claim must establish that: (1) that she belongs to a protected class; (2) that she was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment affected a "term, condition, or privilege" of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt remedial action. *Harvill v. Westward Comme'ns, L.L.C.,*

433 F.3d 428, 434 (5th Cir. 2005); *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999); *Pfeil v. Intercom Telecomm.*, 90 F. Supp. 2d 742, 748 (N.D. Tex. 2000).

Throughout Lakessa Taylor's Complaint, she has only made two (2) allegations that would constitute sexual harassment under a hostile work environment theory.  First, she alleges that, "During her employment with ECPD, Plaintiff was also subjected to harassing behavior on the basis of her gender." See Plaintiff's Complaint at 11.  She further this allegation stating that: "Indeed, other male police officers repeatedly referred to women as "whores" and bragged about their sexual experiences with women." Id. at ¶ 12.

Harassment does not have to be of a sexual nature, however, and can include offensive remarks about a person's sex. For example, it is illegal to harass a woman by making offensive comments about women in general

However, the most critical allegation of sexual harassment under a hostile work environment, is where she alleges that: "At an ECPD holiday party, Officer Michael Cardilli, who later became ECPD's Chief of Police, became intoxicated and attempted to force Plaintiff into his car." Id. at ¶ 13.  She continues this allegation asserting that, "Another female officer intervened and escorted Plaintiff to her car, but Cardilli blocked the officer's car and attempted to physically remove Plaintiff from the car, telling her that he wanted to take her to a hotel room." Id. at ¶ 14.

As more fully described below, neither of these allegations manage to satisfy each of the elements of a hostile work environment claim, and therefore, dismissal of such claims is warranted.

Even if these allegations were true, these allegations cannot support a claim for hostile work environment sexual harassment as Lakessa Taylor alleges at ¶ 15 that, "The events leading to Plaintiff's termination began in early 2018....".  Again, at no point does Ms. Taylor 'date' the

Police Chief's alleged misconduct and her 'report' against another officer in 2014 (Id. Exh. J) that she is perfectly capable and has no qualms against filing such claims.

These allegations then must be found lacking for two reasons.  First, it is observed that Lakessa Taylor has failed to specifically allege a causal connection between the events recited in ¶ 11-14 and any claim that such conduct affected a single "term, condition, or privilege" of her employment.

Even if these comments had been made, such comments are insufficient to establish that Lakessa Taylor was subjected to conduct which affected a "term, condition, or privilege" of her employment. Regarding this fourth element of a sexual harassment hostile work environment claim, [h]arassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Workplace conduct is not measured in isolation. In order to deem a work environment sufficiently hostile, all of the circumstances must be taken into consideration. This includes the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

To be actionable, the work environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (citations and internal quotation marks omitted); *Holmes v. N. Tex. Health Care Laundry Coop. Ass'n,* 304 F. Supp. 3d 525, 546 (N.D. Tex. 2018).

In a nutshell, Lakessa Taylor must prove that her work environment "was permeated with discriminatory intimidation, ridicule, and insult so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment." *Jackson v. Honeywell*

*Int'l, Inc.*, 601 Fed. Appx. 280, 287 (5th Cir. 2015) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993)). "Merely offensive conduct is not actionable." *Holmes*, 304 F. Supp. 2d at 546; citing Harris, 510 U.S. at 21, 114 S.Ct. 367. And, the legal standard for workplace harassment is "high." *Holmes*, 304 F. Supp. 2d at 546; citing *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003).

"[T]he Supreme Court has warned that these high standards are intentionally demanding to ensure that Title VII does not become a general civility code, and when properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language." Howard v. United Parcel Serv., Inc., 447 Fed. Appx. 626, 632 (5th Cir. 2011) (per curiam) (citations and internal quotation marks omitted) (quoting *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275).

Importantly, Lakessa Taylor does not claim that anyone at the City propositioned her for sex, cf. Burlington, 524 U.S. 742, 748, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 19, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); even had sex with her, cf. *Meritor*, 477 U.S. at 60, 106 S.Ct. 2399; even threatened her or in any way suggested that her continued employment was conditioned on the granting of sexual favors, cf. *Burlington*, 524 U.S. at 748, 118 S.Ct. 2257; or even touched or fondled her, cf. *Faragher*, 524 U.S. at 782, 118 S.Ct. 2275.

The alleged behavior (if true), could be considered boorish and offensive, but it is not sufficiently severe and pervasive as a matter of law, to create an abusive working environment that altered a term or condition of her employment with the City. See *Hockman v. Westward Commc'ns. LLC*, 407 F.3d 317, 328 (5th Cir. 2004) (concluding that supervisor's remark to plaintiff regarding another employee's body and request to come into work early so they "could be alone" were boorish and offensive, but not severe); cf *Shepard v. Comptroller Pub. Accounts*,

168 F.3d 871, 874 (5th Cir. 1999) (concluding that supervisor's comments to employee regarding her breasts and thighs were "boorish and offensive," and the equivalent of a "mere utterance of an epithet that engenders offensive feelings, and thus not severe). In fact, the Fifth Circuit has repeatedly determined that facts much more egregious than those alleged by Lakessa Taylor were insufficient to support a hostile work environment claim. See, e.g., *Hockman,* 407 F.3d at 326 (holding that claims that the alleged harasser (1) made a remark to her about another employee's body, (2) slapped her on the behind with a newspaper, (3) "grabbed or brushed" against her breasts and behind, (4) held her cheeks and tried to kiss her, (5) asked her to come to the office early so that they could be alone, and (6) stood in the door of the bathroom while she was washing her hands were insufficient to support a hostile work environment claim); *Derouen v. Carquest Auto Parts, Inc.,* 275 F.3d 42 (5th Cir. 2001) (holding that plaintiff's allegations that co-worker attempted to grab her breast and later touched and rubbed her thigh, that customers made sexually threatening remarks, and that supervisors did not respond to her complaints about these incidents, did not support a hostile work environment claim), *Barnett v. Boeing Co.,* 306 Fed. Appx. 875, 879 (5th Cir. 2009) (unpublished) (holding as a matter of law that conduct was not sufficiently severe or pervasive despite allegation that supervisor "leered" at plaintiff, "touched her in sexually inappropriate and unwelcome ways, and ... actively intimidated her after she complained of his actions").

In the instant case, Lakessa Taylor claimed in ¶52 of her Complaint that Defendant's action against Plaintiff were "intentional, willful, reckless and/ or malicious. Such allegations as to the City's intent thus negates the entire Complaint. This is because the U.S. Supreme Court has found that a municipality cannot be liable for malicious or reckless conduct, *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247 (1981. Ms. Taylor's Complaint did not even include as parties any bad actors that carried out such malicious or reckless conduct with the consequence

that City has no natural persons through which to carry out such malignancies. Id. *Newport,* at 266-271.

Further, in direct contravention of her claims, Lakessa Taylor herself has admitted the true reason for her separation from East Cleveland, Exh. K when she wrote in her cell phone message to Chief Cardilli on Tuesday, July 3, 2018 at 5:15 pm:

> "Chief, I know that by now you are extremely disappointed in me
> rightly do.  I never ment *(sic)* any disrespect to my commander,
> department, and especially not my chief.  I am dedicated and
> loyal to my job and community I serve.  I never ment *(sic)* for this
> to happen.
> Disorder and disobedientce *(sic)* is not apart of my personality.
> Please accept my humble apology."

Thus, Lakessa Taylor's hostile work environment claims fail as a matter of law. Lakessa Taylor fails to sufficiently plead the facts to establish that the City knew or should have known about her alleged claims, and this, too, is fatal to her claims. Lakessa Taylor's sexual harassment claims also fail because she did not plead or prove that she timely filed a charge of discrimination with the EEOC. Lakessa Taylor was required to file her Title VII claim with the EEOC within 300 days of the alleged sexual harassment. See *Frank v. Xerox Corp.,* 347 F.3d 130, 136 (5th Cir. 2003). Lakessa Taylor failed to sufficiently plead the facts to establish when the alleged acts of sexual harassment occurred. Without providing any well pleaded facts as to the timing of the alleged comments, Lakessa Taylor's sexual harassment claims are time-barred and should be dismissed. Thus, Lakessa Taylor's Complaint fails to plead a plausible claim for relief against the City.

Respectfully submitted,

/s/ *Willa M. Hemmons*
Willa M. Hemmons (0041790)
Director of Law
City of East Cleveland

14340 Euclid Avenue
East Cleveland, Ohio 44112
whemmons@eastcleveland.org
Counsel for Defendant, City of East Cleveland

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 7th day of February, 2020 the foregoing *Defendant's Motion to Dismiss* was electronically filed with the Court; and that by operation of the Court's electronic notification system a copy thereof may be accessed by counsel for all parties.

/s/ *Willa Hemmons*
Willa M. Hemmons (0041790)
Director of Law City of East Cleveland
*Attorney for Defendants*
The City of East Cleveland,
East Cleveland Chief of Police Ralph Spotts,
whemmons@eastcleveland.org

2/4/2020                    Obituary for Patricia Ann Lane | Nesbitt Funeral Home and Cremation Services

# Patricia Ann Lane

*Provided by Nesbitt Funeral Home and Cremation Services*

*January 25, 1953 ~ May 26, 2018 (age 65)*



Patricia Ann Lane [Martin] age 65, of Cleveland Hts., Ohio entered into rest on May 26th, 2018. She is beloved mother of Tonya "Toni"; cherished granny of Cody; loving great granny of Kadence and Alani; and dear sister of Gloria O'neal. She served the U.S. Army and dedicated 25 years to law enforcement. She made history by becoming the first female, African American Chief of Police in the City of East Cleveland, Ohio and in the state of Ohio.

## Services

**VISITATION**
Friday
June 8, 2018
1:00 PM to 5:00 PM
Nesbitt Funeral Home and
Cremation Services
Cleveland, OH

**FUNERAL SERVICE**
Saturday
June 9, 2018
10:00 AM
Full Faith Gospel Church of God
and Christ
Warrensville Hts., OH

EXHIBIT

A

# East Cleveland Division of Police
## Monthly Division Schedule
### Monday, November 3, 2003

### Office of the Chief of Police
- Lane, Patricia A. — Chief of Police
- Williams, Jeanette — Exec Assistant
- Perry, Michael — Sgt/AD

### Operations
- Dearden, David — Captain
- Stanton, Kathleen — Community Policing
- Sherrill, Danielle — D.A.R.E./COP

### Detective Division
- Mikovich, David — Lieutenant
- Johnstone, Vincent — Detective
- Cleveland, Tiffany — Detective
- Turner, Lewis — Detective
- Hodge, Jay — Detective
- Marbur, Joseph — Detective
- Hardee, Arthur — Detective
- McCurdy, Henry — Detective

### Narcotics
- Naylor, James — Detective
- Dunn, Martin — Detective
- Cook, Gene — K9-PIT (Gunner)

### Records Division
- Mays, Dena — Records Clerk
- Redding, Shawn — Records Clerk

### Parking Ticket Bureau
- Wright, Delinda — Office Mgr
- Taylor, Yvette — Clerk

### Platoon "A" 0700 hours - 1900 hours
- Spotts, Ralph — Lieutenant
- Giotta, John — Sergeant
- Hardy, Stanley — Ptl
- Harper, Gary — Ptl
- Archer, Michael — Ptl
- Cunningham Kyle — Ptl
- Cardilli, Michael — Ptl/K9
- Harris, Von — Ptl
- Merrell, Matthew — Ptl
- Joiner, Anthony — Ptl
- Battle, Charles — Ptl
- Webster, Marlon — Aux
- Godwin, Malisa — TCO
- Vinson, Berie — CO

A/V = Annual Vacation

### Platoon "B" 1900 hours - 0700 hours
- Johnson, Jerome — Lieutenant
- Robinson, Paula — Sergeant
- Stanford, Ernest — O/ Ptl
- Dunn, Terrence — FTO/ Ptl
- Williams, Jeffery — Ptl
- Holcomb, Reginald — Ptl
- Hicks, Sandy — Ptl
- Vargo, Scott — Ptl/K9 (Krieger)
- Bechtel, John — Ptl
- Cargile, Christopher — Ptl
- Carroscia, Todd — Aux
- Henderson, Tiffany — TCO
- Bradley, Bridgett — CO

### Platoon "C" 0700 hours - 1900 hours
- Gard, Patrick — FTO / Ptl
- Balli, Matthew — A/Lieutenant
- Lucarelli, Joseph — Sergeant
- Wheeler, Terry — Ptl
- Glapsy, Shawna — [K9] (Kane) A/V 11-16-11-30
- Moore, Torris — O / Ptl
- Gerhard, Brian — Ptl A/V 11-01-11/15
- Woods, Ralph — Ptl
- Evans, Antonio — Ptl
- Willis, William — Ptl
- Mitchell, William — Ptl
- Lee, LaShonda — TCO
- Muhammed, Fareed — TCO
- Taylor, Davida — CO

### Platoon "D" 1900 hours - 0700 hours
- Henlaw, Daniel — Lieutenant
- Fossett, Anthony — A/Sergeant
- Ruth, James — FTO/ Ptl
- Band, William — FTO / Ptl
- Taddese, Benjamin — Ptl
- Steadman, Raymond — Ptl/K9
- Allen, Mark — Ptl
- Bolton, Kenneth — Ptl A/V 11-01-11/15
- Gardner, Scott — Ptl
- Nevels, Wilbert — Ptl A/V 11-16-11-30
- Booker, Anissa — Ptl
- Peter, David — Ptl
- Felton, Virginia — Aux
- Hayes, Abdul — TCO/Aux Temp — CO

### Off Duty/Military Leave/Duty Injury
- Storm, Christopher — Ptl- Military Leave
- Cook, Michael — Ptl - Military Leave
- May, Jean — Office Mgr-FMLA
- Hollins, Linda — CO - Injury (Nov 03)

**EXHIBIT B**

# EAST CLEVELAND POLICE DEPARTMENT

## OFFICE OF THE CHIEF OF POLICE

| | | PART-TIME |
|---|---|---|
| Sparks, Ralph | Chief of Police | McGee, Rickie |
| Hairston, Darren | | Long, N. Chief |
| Webb, Kenneth | Captain | |
| | Executive Asst. | |
| Garrand, Sam | Internal Affairs | |
| Cunningham, Kyra | Admin. Conn | |
| | Admin. Sgt | |

### SCHOOL RESOURCE OFFICERS

| | |
|---|---|
| | Rooftoof Paula | Sergeant |
| | Carolyn, Christopher | Patrolman |

## DETECTIVE DIVISION

| | | Cuyahoga County Sheriff's Task Force |
|---|---|---|
| Cardillo, Michael | Det Div Comm | Nicholson, Robert | Patrolman |
| Esparza, Ernest | 1100-1900 | | |
| McDonald, Fred'd | 1000-1800-1926 | | |
| Daniels, Michael | 2000-1600 | | |
| Henry, Kirell | 0000-1600 | | |
| Coward, Yasmin | 0300-800 | | |
| Thompson, Denny | 0800-1600 | | |
| | 0900 1050 | | |

### C.O.P.S UNIT

| | |
|---|---|
| John, Anthony | Patrolman |
| Terry, David | Patrolman |
| McGonnes, Larry | Patrolman |
| Brown, Virginia | Patrolman |
| Hans Von | Patrolman |

## STREET CRIMES NARCOTICS UNIT

| | |
|---|---|
| Moore, Torris | Lieutenant |
| Julien, Mark | Sergeant |
| Jones, GPO | Detective |
| Marks, Andrew | Detective |
| King Dominique | Detective |

### DUTY INJURY/SICK LEAVE/GOING LEAVE

| | |
|---|---|
| Squatrom, Steven | FMLA |
| Wringhton, Edwin | FMLA |

## PLATOON "A" 1900-0700 HOURS

| | |
|---|---|
| Said, Matthew | Lieutenant |
| Veth, William | Sergeant |
| Dobol, Kendall | Patrolman |
| Tela, Tomas | Patrolman |
| Tela, John | Patrolman |
| Annabaal, Stanka | Patrolman |
| Gerhard, Samuel | BPO |
| Doria, Brady | BPO |

### STAFF AND SERVICE

| | |
|---|---|
| Smith, Laquita | YAC Officer |
| McDougle, Kiana | Office Mgr |
| Goods, Randon | Teacher's |
| McPherson, LaKes | Teacher's |
| Mosley, Lasa | Secretary |
| Carter, Tarsia | Office Officer |
| Payne, Yvonne | Clerk Officer |
| Perry, Quelshia | Office Mgr/Clerk Officer |
| Preston, Virginia | 0700-150 |
| Ucis, Aaisa | 0700-1500 |
| | 1500-2300 |

## PLATOON "B" 0700-1900 HOURS

| | |
|---|---|
| Naylor, James | Lieutenant |
| Williams, Jeffrey | Sergeant |
| O'Leary, John | Patrolman |
| Kelly, Sean | Patrolman |
| Karal, Steven | Patrolman |
| Thompson, Franklin | BPO |
| Williams, Joshua | BPO |
| Dalton, Joe | BPO |

| | |
|---|---|
| Teachey, Leashia | |
| Robinson, Shaerd | 1500-2300 |
| Vasko, T. Ray | 230C-0700 |
| Sm'de Dejire | 230C-0700 |
| Arnoghano, Monese | 230-0700 |
| Wright, Derica | Parking |
| Sutton, Frank | Parking |
| | Meters |

## PLATOON "C" 0700-1900 HOURS

| | |
|---|---|
| Michael, William | P/L Div. Comm |
| Dixon, Deaven | Sergeant |
| Conlan, Darron | Patrolman |
| Cannon's Tedd | Patrolman |
| Isaaa Spencer | BPO |
| Dobel, I. K. | BPO |
| McGash, Stanley | BPO |
| Frain, Jaime | BPO |

### CORRECTIONS

| | |
|---|---|
| | Jail Admin |
| Robinson, Linda | CO ADDP OIC |
| Walker, David | CO ADDP OIC |
| Brown Brian | |

## PLATOON "D" 1900-0700 HOURS

| | |
|---|---|
| Foster, Anthony | Lieutenant |
| Conkoy, John | Al Sergeant |
| Madison, Theodosia | Patrolman |
| Nichols Armory | Patrolman |
| Gradson LaKelia | Patrolman |
| Garrison Joseph | BPO |
| Bar N sheel | BPO |
| Mark Michael | BPO |

| POLICE NAME | RANK | SENIORITY |
|---|---|---|
| VEALS, VANESSA | EXECUTIVE ASSISTANT | |
| SULLIVAN, FRANK | MECHANIC | |
| | | |
| NAYLOR, JAMES | LIEUTENANT | 3-Mar-09 |
| STEADMAN, RAYMOND | LIEUTENANT | 3-Mar-09 |
| BALL, MATTHEW | LIEUTENANT | 3-Mar-09 |
| CARDILL, MICHAEL | LIEUTENANT | 3-Mar-09 |
| WHEELER, TERRY | LIEUTENANT | 3-Mar-09 |
| | | |
| ROBINSON, PAULA | SERGEANT | 23-Jun-96 |
| WILLIAMS, JEFFREY | SERGEANT | 1-May-06 |
| RUTH, JAMES | SERGEANT | 1-Oct-07 |
| BOLTON, KENNETH | SERGEANT | 23-Jun-08 |
| MOORE, TORRIS | SERGEANT | 3-Mar-09 |
| GERHARD, BRIAN | SERGEANT | 3-Mar-09 |
| CUNNINGHAM, KYLE | SERGEANT | 3-Mar-09 |
| GARDNER, SCOTT | SERGEANT | 19-Jul-10 |
| MITCHELL, WILLIAM | SERGEANT | 28-Mar-11 |
| | | |
| STANFORD, ERNEST | 1ST GRADE PATROLMAN | 22-Oct-78 |
| HARRIS, VON | 1ST GRADE PATROLMAN | 30-Dec-97 |
| HOLCOMB, REGINALD | 1ST GRADE PATROLMAN | 23-Nov-98 |
| ALLEN, MARK | 1ST GRADE PATROLMAN | 21-Dec-98 |
| CARGILE, CHRISTOPHER | 1ST GRADE PATROLMAN | 22-Oct-01 |
| WILLIS, WILLIAM | 1ST GRADE PATROLMAN | 22-Oct-01 |
| NICHOLSON, ROBERT | 1ST GRADE PATROLMAN | 1-Oct-07 |
| O'LEARY, JONATHAN | 1ST GRADE PATROLMAN | -1-Oct-07 |
| DELISLE, MICHAEL | 1ST GRADE PATROLMAN | 1-Oct-07 |
| CARROSCIA, TODD | 1ST GRADE PATROLMAN | 15-Oct-07 |
| MALONE, ANTONIO | 1ST GRADE PATROLMAN | 17-Dec-07 |
| CROWELL, YASHILA | 1ST GRADE PATROLMAN | 29-Apr-09 |
| JONES, ERIC | 1ST GRADE PATROLMAN | 29-Apr-09 |
| BAILEY, ROBERT | 1ST GRADE PATROLMAN | 23-Nov-09 |
| BROWN, DEAUDREA | 1ST GRADE PATROLMAN | 11-Oct-10 |
| THOMPSON, DSHAUN | 1ST GRADE PATROLMAN | 3-Jan-11 |
| CUSHMAN, SHANNON | 1ST GRADE PATROLMAN | 10-May-11 |

| Name | Title | Date |
|---|---|---|
| MALONE, ANTHONY | 1ST GRADE PATROLMAN | 10-May-11 |
| JOINER, ANTHONY | 1ST GRADE PATROLMAN | 24-Oct-11 |
| DUNLAP, JOE | 1ST GRADE PATROLMAN | 24-Oct-11 |
| HARVEY, KEVIN | 1ST GRADE PATROLMAN | 24-Oct-11 |
| MCDONALD, LARRY | 1ST GRADE PATROLMAN | 14-Nov-11 |
| CAPPELLO, JOSEPH | 1ST GRADE PATROLMAN | 14-Nov-11 |
| DOLBIN, NICK | 1ST GRADE PATROLMAN | 14-Nov-11 |
| PERLMUTER, DAVID | 1ST GRADE PATROLMAN | 14-Nov-11 |
| ARMSTEAD, SHANIKA | 1ST GRADE PATROLMAN | 21-Nov-11 |
| GHOLSTON, LAKESSA | 1ST GRADE PATROLMAN | 28-Nov-11 |
| SMITH, TYLER | 3RD GRADE PATROLMAN | 12-Aug-13 |
| WASHINGTON, EDWARD | DISPATCHER | |
| MCDOUGLE, KISSA | OFFICE MANAGER | |
| BROOKS, BABELON | DISPATCHER | |
| SMITH, LAQUITA | DISPATCHER | |
| TEACHEY, LASHELLE | DISPATCHER | |
| HOLLINS, LINDA | JAIL ADMINISTRATOR | |
| FOSTER-REESE, LATONYA | CORRECTION | |



# *The City of East Cleveland*

14340 EUCLID AVENUE • EAST CLEVELAND, OHIO 44112 • PHONE (216) 681-2208 • FAX (216) 681-26 50

### CIVIL SERVICE COMMISION

GARY A. NORTON JR.
MAYOR
Annamaria Smith
Civil Service Secretary

Civil Service Commissioners

Alfonza Butts
President
Johnny Brewington
Vice-President

September 01, 2011

Lakessa L. Gholston
1173 Winston Rd.
South Euclid, OH 44121

Dear Lakessa Gholston:

This letter is to inform you that you did not pass the Physical Agility portion of the Police Officer Civil Service Examination for the East Cleveland Police Department.  Therefore, regretfully you will not be eligible to be on the list of eligible applicants.

Thank you for your interest in working for the East Cleveland Police Department.  Good luck in your career in law enforcement.

Sincerely,

Annamaria Smith
Director of Human Resources
        For
The City of East Cleveland
Civil Service Commission

cc:      File

**EXHIBIT**

*C*

*Working Together To Build A Better Community*



# The City of East Cleveland

14340 EUCLID AVENUE • EAST CLEVELAND, OHIO 44112 • PHONE (216) 681-2264 • FAX (216) 681-2749

## CIVIL SERVICE COMMISION

GARY A. NORTON JR.
MAYOR
Annamaria Smith
Civil Service Secretary

Civil Service Commissioners

Alfonza Butts
President
Johnny Brewington
Vice-President

July 28, 2011

Dear Lakessa Gholston:

You are being given another opportunity to take the Physical Agility test with the City of East Cleveland.

Please report for your Physical Agility test;

|  |  |
|---|---|
| Date: | Saturday, August 13, 2011 |
| Location: | MLK Civic Center |
|  | 14801 Shaw Avenue |
|  | East Cleveland, OH  44112 |
| Time: | 09:00 AM |

If you have accepted a job with another police department and are no longer interested in continuing in the selection process for Police Officer with the East Cleveland Police Department, please contact the Human Resources office in writing to request that your name be removed from the list.

Thank you for your interest in working for the East Cleveland Police Department.  Good luck in your career in law enforcement.

Sincerely,

Annamaria Smith
Director of Human Resources
Civil Service Secretary
For
The City of East Cleveland
Civil Service Commission

cc:      File

*Working Together To Build A Better Community*
www.eastcleveland.org

# East Cleveland Police
# Physical Agility Test Score Sheet

Candidates full name (print)_____

DOB_____/_____/_____

DL #_____

Date: _____7___/___16___/___11___

|  | | test monitor will initial pass or fail | pass (P)   Fail (F) |
|---|---|---|---|

27) Push Ups      No time limit      _____/_____

2) 31 Sit ups      60 sec      _MD_/_____

3) Bench press      78% body weight      _P_/_____

4) 300 meter run      62 sec      _____/_____

5) 1-1/2 Mile run      16 min 32 sec      _____/_____

6) Agility Run      19 sec      _____/_____

Candidates Signature:_____

OHIO PEACE OFFICER TRAINING COMMISSION

PEACE OFFICER COMMISSION AND OATH OF OFFICE

---

**I.    TO BE COMPLETED BY APPOINTEE:**

On this date, you are hereby appointed as a peace officer to serve as a <u>Police Officer</u> for
<span style="margin-left:20em;">position/title</span>

the <u>East Police Department</u> pursuant to <u>737.02</u>
<span>department name</span> <span>ORC Section</span>

As such, you shall swear or affirm the following:

I, <u>LaKessa Gholston</u>, do solemnly swear or affirm that I will support the
<span>appointee</span>

Constitution and Laws of the United States of America, the Constitution and Laws of the State of Ohio,

and the Laws and Ordinances of <u>City of East Cleveland</u> and to the best of my ability will
<span>political subdivision</span>

discharge the duties of the office of <u>Police Officer</u>
<span>position/title</span>

<u>(signature)</u>     <u>11/28/2011</u>
Signature of Appointee     Date of Appointment

---

**II.    TO BE COMPLETED BY APPOINTING AUTHORITY:**

By signing below, I hereby swear or affirm that <u>LaKessa Gholston</u> is
<span>appointee</span>

appointed to the above position pursuant to the authority vested in me by <u>737.02</u>, and
<span>ORC Section</span>

that the individual has personally appeared before me and signed this oath in my presence.

<u>(signature)</u>     <u>Gary A. Norton Jr., Mayor</u>
Signature of Appointing Authority     Typed Name of Appointing Authority and Title

---

**III.    NOTARY:**

Sworn to and subscribed before me this <u>28</u> day of <u>November</u>, 20 <u>11</u>.

<span style="margin-left:6em;">KISSA McDOUGLE, Notary Public<br>In and for the State of Ohio</span>

My commission expires <u>My Commission Expires Sept. 27, 2015</u>     <u>(signature)</u>
<span>Signature of Notary/Clerk of Courts</span>

---

**EXHIBIT**

D

*The City of East Cleveland*

DEPARTMENT OF HUMAN RESOURCES
PERSONNEL APPOINTMENT FORM

Routing:    + Department Head    ÷ Finance Director    + Human Resources    + Mayor

| EMPLOYEE INFORMATION | | |
|---|---|---|

GHOLSTON                           LEKESSA                                    L
Last Name                          First Name                               M.I

1173 WINSTON RD          SOUTH EUCLID           OHIO          44121
Address                          City                      State          Zip

Sex    FEMALE          Birthdate   01-16-1978       SSN: ▉▉▉▉▉▉
▉▉▉▉▉▉▉▉                                               216-681-2378
Home Phone              Emergency Phone            Department Phone

| POSITION INFORMATION | | |
|---|---|---|

Title   COP              Department   POLICE              Hire Date _____
                                                          Rehire Date _____

This is a:
+ New Position X      + Replacement – Person Replacing _____
+ Temporary -         From _____          To: _____
Employee Status      + Permanent X       + Temporary      + Full-time X      + Part-time
+ Union    + Non-Union    Name of Union: _____     Dues Amount _____
+ Civil Service
Hours Worked per Week _____40_____

Annual Salary   $34,876.20      Hourly Rate   $16.7674    If applicable, alternate rate/hour:   $25.1511

*(Budget Account # is a 12-digit # (Example: 1110,2780,5211) Payroll Account # is a 4-digit # (Example: 2302) – Refer to "Accounts Listing" sheet.*
Budget Account #   COP GRANT          Payroll Account # _____    % Chargeable   100%
Budget Account # _____       Payroll Account # _____    % Chargeable _____
Budget Account # _____       Payroll Account # _____    % Chargeable _____

Pension    + Public Employees Retirement System (P.E.R.S.)    + Social Security (Elected Officials Only)
           + Police and Firemen's Disability Pension Fund (P.F.D.P.F.)

| APPROVALS | |
|---|---|

Department Director _____ Date  4/18/11
Finance Director    _____ Date  _____
Human Resources Director _____ Date  _____
Mayor               _____ Date  1/18/11

| FOR HUMAN RESOURCES USE ONLY | |
|---|---|

Employee Record # _____     EEOC _____



## The City of East Cleveland

DEPARTMENT OF HUMAN RESOURCES
PERSONNEL STATUS CHANGE FORM

| Routing: | + Department Head | + Finance | + Human Resources | + Mayor |
|---|---|---|---|---|

### EMPLOYEE INFORMATION

Last Name  **GHOLSTON**   First Name  **LAKESSA**   Middle Initial

Employee Record #   111573   Social Security Number

Title  3ʳᵈ Grade Patrolman   Department  Police   Department Phone  681-2378

### CHANGE INFORMATION

| TYPE | FROM | TO | EFFECTIVE DATE |
|---|---|---|---|
| Position | 3ʳᵈ Grade Patrolman | 2ⁿᵈ Grade Patrolman | Nov. 28, 2012 |
| Rate of Pay | $16.7674 | $18.63 | Nov. 28, 2012 |
| Alternate Rate | $25.1511 | $28.17337 | Nov. 28, 2012 |
| Retro Pay (amount) | | | |
| Department | | | |
| Budget Account # | COP Grant | | |
| Payroll Account # | | | |
| Budget Account # | | | |
| Payroll Account # | | | |
| Budget Account # | | | |
| Payroll Account # | | | |
| Employment Status | | | |
| Union | | | |
| Union Dues (amount) | | | |
| Longevity (amount) | $0.00 | $18.2693 | Nov. 28, 2012 |
| Weeks of Vacation | | | |
| Car Allowance (amount) | | | |
| Clothing Allowance | | | |
| Educational Allowance | | | |
| Equipment Allowance | | | |
| S.W.A.T. Allowance | | | |
| Other | | | |
| Other | | | |

### APPROVALS

| | | |
|---|---|---|
| Department Director | | Date  3/13/13 |
| Finance Director | | Date |
| Human Resources Director | | Date |
| Mayor | | Date |

### FOR HUMAN RESOURCES USE ONLY

EEOC: _____

Rev 10-1-00

*+ Replacement form*

EXHIBIT
E

*A Community of Achievement*

## The City of East Cleveland

### DEPARTMENT OF HUMAN RESOURCES
### PERSONNEL STATUS CHANGE FORM

Routing:     + Department Head        + Finance        + Human Resources        + Mayor

| EMPLOYEE INFORMATION | | | |
|---|---|---|---|

Last Name  **GHOLSTON**        First Name  **LAKESSA**        Middle Initial

Employee Record #    **111573**        Social Security Number ████████

Title   **2ⁿᵈ Grade Patrolman**        Department   **Police**        Department Phone   **681-2378**

| CHANGE INFORMATION | | | |
|---|---|---|---|
| TYPE | FROM | TO | EFFECTIVE DATE |
| Position | 2ⁿᵈ Grade Patrolman | 1ˢᵗ Grade Patrolman | Nov. 28, 2013 |
| Rate of Pay | $18.63 | $20.5642 | Nov. 28, 2013 |
| Alternate Rate | $28.17337 | $31.07467 | Nov. 28, 2013 |
| Retro Pay (amount) | | | |
| Department | | | |
| Budget Account # | COP Grant | | |
| Payroll Account # | | | |
| Budget Account # | | | |
| Payroll Account # | | | |
| Budget Account # | | | |
| Payroll Account # | | | |
| Employment Status | | | |
| Union | | | |
| Union Dues (amount) | | | |
| Longevity (amount) | | | |
| Weeks of Vacation | | | |
| Car Allowance (amount) | | | |
| Clothing Allowance | | | |
| Educational Allowance | | | |
| Equipment Allowance | | | |
| S.W.A.T. Allowance | | | |
| Other | | | |
| Other | | | |

| APPROVALS | | |
|---|---|---|
| Department Director | _(signature)_ | Date  12/9/13 |
| Finance Director | _(signature)_ | Date  12/9/13 |
| Human Resources Director | _(signature)_ | Date  12-18-13 |
| Mayor | _(signature)_ | Date  12/13/13 |

| FOR HUMAN RESOURCES USE ONLY |
|---|

EEOC: _____

Rev. 10-1-00

CITY OF EAST CLEVELAND
HUMAN RESOURCE DEPARTMENT
PERFORMANCE APPRAISAL

**SECTION A**

EMPLOYEE NAME Lakessa Gholston        TITLE Patrol Officer        DEPARTMENT Police

EVALUATOR'S NAME Deaundra Brown        EVALUATOR'S TITLE A/Sgt

REASON FOR REVIEW ☒ ANNUAL ☐ MERIT ☐ PROMOTIONAL ☐ END PROBATION PERIOD ☐ UNSATISFACTORY PERFORMANCE ☐
OTHER ☐

DATE HIRED 0 3-12-2011  DATE BEGAN CURRENT POSITION  3-12-2011  DATE OF LAST APPAISAL N/A  TODAY'S DATE 12-13-2013

INSTRUCTIONS:  Carefully evaluate the employee's performance in relation to his/her current job requirements.  Check the rating box to indicate the employee's performance.  Indicate N/A if not applicable.  Assign points for each rating within the scale and indicate in corresponding points box.  After completing all twelve factors, total the points and average them for an overall performance score.

## RATING IDENTIFICATION

**O - Outstanding** – Performance is exceptional in all areas and is recognized as being far superior to others.

**V - Very Good** – Results clearly exceeds most position requirements.  Performance is of high quality and is achieved on a consistent basis.

**G - Good** – Competent and dependable level of performance.  Meets performance standards of the job.

**I - Improvement Needed** – Performance is deficient in certain areas.  Improvement is necessary.

**U - Unsatisfactory** – Results are generally unacceptable and requires *Immediate* improvement.

**N - Not Rated** - Not applicable or too soon to rate.

| GENERAL COMPETENCIES | RATINGS | SCORE | SUPPORTIVE DETAILS OR COMMENTS |
|---|---|---|---|
| **_Attitude_** – The degree to which you approach your work with enthusiasm, positive disposition, and professionalism. <br><br> • Shows willingness to accept supervision and constructive criticism <br> • Applies his/herself to both personal and City goals <br> • Knows how to get along with peers, managers, and customers <br> • Deals with people honestly and fairly. <br> • Has a "can do" attitude towards work. <br> • Dresses appropriately in all work situations | O ☐ <br> V ☐ <br> G ☒ <br> I ☐ <br> U ☐ <br> N ☐ | Points <br><br> 100-90 <br> 89-79 <br> 78-70 <br> 69-60 <br> Below 60 <br> NA <br><br> 72 | Has a good attitude most of the time needs work on accepting criticism |
| **_Decision Making_** – Concerns the ability to make informed, timely and reasonable decisions <br><br> • Pulls together the right people and information in order to weigh factors and make the right decision <br> • Communicates the rational for key decisions to those who are affected by them. <br> • Can make and stick to "tough" decisions. <br> • Is courageous and flexible enough to change "wrong" decisions. | O ☐ <br> V ☐ <br> G ☐ <br> I ☒ <br> U ☐ <br> N ☐ | Points <br><br> 100-90 <br> 89-79 <br> 78-70 <br> 69-60 <br> Below 60 <br> NA <br><br> 68 | Performance decision making is deficient , with further experience will get better. |
| **_Customer Focus_**- The willingness and ability to serve internal and external customers well <br><br> • Treats all customers (internal and external) with a sense of professionalism, efficiency, and timeliness <br> • Always determine the customer's needs and expectations <br> • Provides customers with timely feedback on job/project status <br> • Is willing to "go beyond the call of duty to meet reasonable customer demands" | O ☐ <br> V ☐ <br> G ☒ <br> I ☐ <br> U ☐ <br> N ☐ | Points <br><br> 100-90 <br> 89-79 <br> 78-70 <br> 69-60 <br> Below 60 <br> NA <br><br> 74 | Is courteous but needs just a little more patience's |

| GENERAL COMPETENCIES | RATINGS | SCALE | SUPPORTIVE DETAILS OR COMMENTS |
|---|---|---|---|

**EXHIBIT**
F

| | | Points | |
|---|---|---|---|
| *Quality:* The accuracy, thoroughness, and capacity of the work being done.<br><br>• Shows willingness to continually improve his/her work,<br>• Always checks his/her work for errors.<br>• Corrects errors as soon as they are found<br>• Inspires and contributes to high quality work in the department or work group<br>• Views quality and process improvement as a major job duty<br>• Participates in City of East Cleveland quality improvement initiatives.<br>• Knows and applies quality principles to his/her work | O ☐<br>V ☐<br>G x<br>I ☐<br>U ☐<br>N ☐ | 100-90<br>89-79<br>78-70<br>69-60<br>Below 60<br>NA<br><br>72 | Writes good reports but takes and extreme amount of time To complete |
| *Leadership:* - The ability to get work done through others.<br><br>• Always strives to get work done through others.<br>• Leads the way in resolving difficult technical or business problems<br>• Peers and managers see him/her as the "go to" person when it comes to obtaining pertinent information about doing the job.<br>• Is able to clearly convey the City and/or departments imperatives and goals to managers and peers as needed | O ☐<br>V ☐<br>G ☐<br>I x<br>U ☐<br>N x | 100-90<br>89-79<br>78-70<br>69-60<br>Below 60<br>NA<br><br>69 | Still a new officer hasn't had much opportunity to lead, but from what I've seen just needs more confidence in her ability to do the job |
| *Reliability* - Concerns the extent to which the employee can be depended upon to get his/her part of the work done.<br><br>• Is always on time and avoids unscheduled absences.<br>• Always delivers on what is required and/or promised in order to get a job or project done on time<br>• Is available "in a pinch" and can be depended on during a time of crisis. | O ☐<br>V ☐<br>G x<br>I ☐<br>U ☐<br>N ☐ | 100-90<br>89-79<br>78-70<br>69-60<br>Below 60<br>NA<br><br>70 | Has been late a couple of times but otherwise shows up ready to work. |
| *Flexibility* – The ability to work on and manage multiple tasks and priorities.<br><br>• Has the ability to adjust to changing priorities and work conditions.<br>• Always strives to maintain a high level of quality and productivity regardless of the surrounding conditions or distractions<br>• Is able to refocus priorities during a crisis without undue prompting and direction from superiors. | O ☐<br>V ☐<br>G ☒<br>I ☐<br>U ☐<br>N ☐ | 100-90<br>89-79<br>78-70<br>69-60<br>Below 60<br>NA<br><br>71 | Has learned how to police but needs more training in dispatch and jail |
| *Team Work* – The ability to work collaboratively with co-workers to get things done.<br><br>• Always communicates well with peers, managers, and customers/residents about relevant work issues.<br>• Is willing to share his/her knowledge and expertise to get the job done<br>• Always respects and supports the efforts of co-workers. | O ☐<br>V ☐<br>G ☒<br>I ☐<br>U ☐<br>N ☐ | 100-90<br>89-79<br>78-70<br>69-60<br>Below 60<br>NA<br><br>75 | Communicates well. Likes to teach others. |

| GENERAL COMPETENCIES | RATINGS | SCALE | SUPPORTIVE DETAILS OR COMMENTS |
|---|---|---|---|
| Job Knowledge – The technical and professional skills the employee brings to the job.<br><br>• Always strives to know what is supposed to be done on the job and how to do it effectively.<br>• Uses his/her skill, knowledge, education, and training to be the most productive, high quality performer he/she can be. | O ☐<br>V ☐<br>G ☒<br>I ☒<br>U ☐<br>N ☐ | Points<br>100-90<br>89-79<br>78-70<br>69-60<br>Below 60<br>NA<br><br>68 | Has a working knowledge of ORC and City Ord. Has job knowledge fix's with time on the job. |
| Productivity – The quantity of work the employee produces, the rate of speed, and the timeliness he/she completes the work.<br><br>• Always strives to meet or exceed individual productivity goals<br>• Is seen by both managers and peers as one of the key people on the team in terms of meeting departmental and/or work group goals.<br>• Knows how to "work smart" to get the job or project done as quickly and efficiently as possible. | O ☐<br>V ☐<br>G x<br>I<br>U ☐<br>N ☐ | Points<br>100-90<br>89-79<br>78-70<br>69-60<br>Below 60<br>NA<br><br>78 | Has met every productivity goal |
| Communication – The employee's ability to effectively discuss business issues with peers, superiors, subordinates, and/or residents.<br><br>• Always uses effective listening skills when dealing with internal and external customers<br>• Communicates effectively with peers, managers, customers and/or residents on a timely and honest basis.<br>• Effectively uses verbal communicates in both face-to-face and group communications<br>• Is able to provide effective written communications when necessary to get the job done | O ☐<br>V ☐<br>G x<br>I<br>U ☐<br>N ☐ | Points<br>100-90<br>89-79<br>78-70<br>69-60<br>Below 60<br>NA<br><br>70 | Displays ok communication skills with civilians and peers is somewhat out spoken for a new Officer needs to observe more. |
| Technical Competence – The ability of the employee to apply his/her technical training, education, and experience to his/her job responsibilities.<br><br>• Knows the tools and principles of the technical discipline in which he/she is working.<br>• Takes personal pride in his/her knowledge of and expertise in the technical discipline in which he/she works.<br>• Strives to take his/her knowledge, experience, and training to the "next level" of understanding and expertise.<br>• Is willing to learn the latest technology of his/her discipline | O ☐<br>V ☐<br>G ☒<br>I ☒<br>U ☐<br>N ☐ | Points<br>100-90<br>89-79<br>78-70<br>69-60<br>Below 60<br>NA<br><br>73 | Good technical understanding for time on the job. |
| Please compute the employee's overall rating by averaging the scores you gave for all of the twelve categories.  You can get the average by adding up the scores for each category and dividing by the number of categories for which you gave a score.  For example if you gave a score of 85 for all 12 categories, the over all score would be 85 x 12 = 960 DIVIDED BY 12 for an overall score of 85.  This means the employee would receive an overall performance rating of Very Good. | | Overall Rating<br><br>70.56 | On the next page of the East Cleveland Performance Evaluation form, provide a detailed Action Plan to improve the employee's performance. |

EAST CLEVELAND PERFORMANCE EVALUATION
PERFORMANCE IMPROVEMENT ACTION PLAN

*SECTION B*

Summarize the Employee's overall performance as determined in your joint discussion.  Try to identify both *positive* and *negative* performance areas.

Officer Gholston is a good officer. Has learned most of the functions of a police officer  She is learning  to better dispose of trivial calls in a professional demeanor and understands the problem she has with excepting constructive criticism and working  to adjust  it accordingly

Describe any specific objectives the employee must take to improve performance for *each* deficient area

Once Officer Gholston gains more confidence in herself, she will be excellent at handling anything. She must question less and began to look at things in a more positive way

Describe the action steps the employee agrees to take to meet the above improvement objectives.

Employee agrees with her assessment and is working diligently to improve

Describe the actions you will take to support and monitor the employee's performance improvement plan.

I will continue to monitor the development of Officer Gholston.

Identify what you will be measuring/monitoring in order to determine whether improvement is taking place.  Identify when the next discussion the employees' progress towards improvement will take place.

Officer Gholston will be given the lead on more calls and only advised on a need to base which should let her see she can handle it and build up her confidence.

Describe employee's progress in meeting goals established during previous rating period.  Identify whether employee's performance has improved, deteriorated, Or stayed the same.

Officer Gholston development has been steady. For an officer with less than two years on the job .

Additional Comments:

She is a valued member of this shift and I looked forward to seeing her continued growth as an Officer with the East Cleveland Police Department.

SECTION C:

| This report is based on my observation and knowledge of both the employee and the job: | My signature indicates that I have reviewed this performance appraisal   It does not necessarily mean that I agree with the findings |
|---|---|
| Supervisor A/Sgt  Brown _____ | Employee _____ |
| H.R. Director: _____ | |
| Date:  _12__/ _13____/ __2013____ | |

# City of East Cleveland
## Division of Police
## Probationary Officer's
## Monthly Report

Name: _____ Lakessa Gholston _____ Badge # _0210_

FTO: _____ Kevin Rastall _____ Badge # _____ 0200__

Date: ___12-31-2011_____ Shift Assigned: ___A Platoon_____

Rating Scale:
1. Not acceptable
2. Below Average
3. Average
4. Above Average
5. Excellent

Appearance: 3

Shows up to work dressed and ready while looking professional.

Attitude: 2

Needs to listen to instructions better at times. She is easily frustrated, however she is learning to adapt to a high stress environment.

Knowledge of Policy and Procedure / Rules and Regulations: 2

Officer Gholston is a new officer who needs to study the Rules and Regulations as well as Policy and Procedure.

Knowledge of Ohio Revised Code and Codified Ordinances: 2

Has a fair knowledge of the ORC, however she needs to study the Codified Ordinances And stay up to date on the ORC as well.

Driving Skills: N/A

Not observed.

Call for Duty Response: 2

Required to follow her FTO, however observant upon arriving at calls.

Knowledge of Forms – Accuracy and Completeness: 2

Still learning to follow instructions and proof read the forms she completes.

Revised November 2007

# City of East Cleveland
# Division of Police
# Probationary Officer's
# Evaluation Report

**Report Writing: N/A**

Still observing her FTO complete reports. Completed simple Criminal Damaging report
With FTO.

**Field Performance: 2**

Still required to follow her FTO on calls and when interacting with the public. Needs to
Communicate more effectively with other officers while on calls.

**Officer Safety: 2**

Needs to be instructed on how to approach and handle suspect.

**Problem Solving/Decision Making Skills: 2**

Needs to improve upon her problem solving skills and learn to become resourceful.

**Radio and Telephone Procedures: N/A**

Instructed to listen to FTO while he uses the radio. Not observed.

**Knowledge and Use of Computer Aided Dispatch / Records Management Program: 2**

Still required to be shown where information is located on the TAC Mobile Data
Terminal.

**Communication Skills/Citizen and Professional: 3**

Very professional and polite while interacting with citizens.

**FTO Comments:**

Officer Gholston is a new Officer and still has a lot to learn, however she shows
Potential.

Revised November 2007

# City of East Cleveland
# Division of Police
# Probationary Officer's

**Comments (Shift Supervisor)**

[illegible]

Continued Employment: Yes X No ____

Signature [illegible signature] Date: 25 [illegible]

**Documentation of Activity or remedial training:**

This evaluation was gone over with me with my training officer and supervisor.

Officers Signature [illegible signature] Date: [illegible]

Electronically Filed 02/07/2020 19:26 / MOTION / CV 20 927894 / Confirmation Nbr. 1938445 / CLSK1

# City of East Cleveland
## Division of Police
## Probationary Officer's
## Monthly Report

Name: _____ Lakessa Gholston _____ Badge # _0210___

FTO: _____ Kevin Rastall _____ Badge # _____0200____

Date: _____01-25-2012_____ Shift Assigned: __A Platoon_____

Rating Scale:
1. Not acceptable
2. Below Average
3. Average
4. Above Average
5. Excellent

Appearance: 3
Shows up to work dressed and ready while looking professional.

Attitude: 3
Able to learn and develop from constructive criticism. Learning to adapt to the pressures of
The job.

Knowledge of Policy and Procedure / Rules and Regulations: 3
Still learning a working knowledge of Police along with Rules and Regulations. Shows
Improvement in this area.

Knowledge of Ohio Revised Code and Codified Ordinances: 3
Good knowledge of ORC, but learning Codified Ordinances.

Driving Skills: N/A
Not observed.

Call for Duty Response: 3
Is not afraid to respond and assist in handling to dangerous calls.

Knowledge of Forms – Accuracy and Completeness: 3
Following instructions and becoming more accurate when completing required forms.

# City of East Cleveland
## Division of Police
## Probationary Officer's
## Evaluation Report

**Report Writing: 2**

Needs to include more detail in reports at times, and proof read prior to turning them in.

**Field Performance: 3**

Able to handle certain calls on her own, however there are still times that she needs instruction after the call.

**Officer Safety: 3**

Using safer tactics when approaching and handling potentially dangerous suspects, but needs to Be more assertive at times.

**Problem Solving/Decision Making Skills: 3**

Learning how to better use the resources available to her to make better decisions and solve Problems.

**Radio and Telephone Procedures: 2**

Needs to speak louder and more clearly when using the radio. Radio tactics need improvement.

**Knowledge and Use of Computer Aided Dispatch / Records Management Program: 3**

Able to use the TAC Mobil Data Terminal to gather information in a more timely fashion.

**Communication Skills/Citizen and Professional: 3**

Remains professional and courteous to citizens.

**FTO Comments: 3**

Officer Gholston shows improvement and willingness to do the job.

Revised November 2007

# City of East Cleveland
# Division of Police
# Probationary Officer's

Comments (Shift Supervisor)

I am [illegible] impressed with the improvements this month. She is well on her way to being a successful police officer. She needs to continue her forward progress.

Continued Employment: Yes ✓ No ___

Signature [illegible signature] Lieutenant Date: [illegible]

Documentation of Activity or remedial training:

| |
|---|
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |

This evaluation was gone over with me with my training officer and supervisor.

Officers Signature Ptl. [illegible signature] Date: [illegible]

Revised November 2007

# City of East Cleveland
# Division of Police
# Probationary Officer's
# Monthly Report

Name:  Ptl. Gholston_____Badge # 0210____

FTO:  __R. Nicholson#41_____Badge # _____

Date:  _05/30/2012_____    Shift Assigned:  ___A  Platoon_____

Rating Scale:
1.  Not acceptable
2.  Below Average
3.  Average
4.  Above Average
5.  Excellent

Appearance:
(3)Officer's appearance is neat and presentable to the public

Attitude:
(3)Officer's attitude is improving, she sometimes becomes frustrated and lets her emotions show to others. It's evident that she wants to do a good job but expects things to happen overnight.  I believe she will be a good officer but needs to slow down and be more observant to her surroundings.

Knowledge of Policy and Procedure / Rules and Regulations:
(3) Officer still in the process of learning

Knowledge of Ohio Revised Code and Codified Ordinances:
(3)

Driving Skills:
(2)  Needs improvement in tactically approaching homes/suspects.  In the process of learning and is developing at a good pace.

Call for Duty Response:
N/A

Knowledge of Forms – Accuracy and Completeness:
(3) Still leaning the system but doing well, needs to become more efficient on her report writing.

Revised November 2007

# City of East Cleveland
# Division of Police
# Probationary Officer's
# Evaluation Report

**Report Writing:**

(3) Officer writes a good report, needs to take less time but does a good job at describing and painting the picture of a scene.

**Field Performance:**

(3) Still in the process of learing the job

**Officer Safety:**

(3) Officer is learning how to position herself and her vehicle in a defensive/offensive manner and on a good tract.

**Problem Solving/Decision Making Skills:**

(3) Needs to learn to make a decision and stick with it. I feel that she will curve this with more time on the road and experience.

**Radio and Telephone Procedures:**

(3) Officer speaks good on the radio, very clear and concise.

**Knowledge and Use of Computer Aided Dispatch / Records Management Program:**

(3) Still learning the system.

**Communication Skills/Citizen and Professional:**

(3) Officer Gholston's attitude toward the citizens of the city and those she comes in contact with are typical of someone with her time and experience. I feel that she just needs to learn when to turn it up/down but is developing.

**FTO Comments:**

I feel that Officer Gholston will be a good officer but needs to improve her attitude. Its not that her attitude is negative, it's that she becomes frustrated easily and beats herself up mentally when she does not meet the expectations she sets for herself. I feel that she will overcome this with more experience and time on the road. My other concern is that she

needs to be more observant of the people and objects surrounding her. She is learning at a good pace and on tract to soon be on her own.

Revised November 2007

# City of East Cleveland
# Division of Police
# Probationary Officer's

**Comments (Shift Supervisor)**

I CONCURRED WITH PTL. NICHOLSON, BUT FEEL SHE IS NEARING THE WAY TO BE BY HISSELF. OFC. CULBERTSON IS ON THE WAY TO DEDIE SOLO, HOWEVER MVCY NEEDS TO IMPROVE ON HER OWN SELF ESTEEM

W.W.

Continued Employment: Yes _✓_  No ___

Signature _Sgt. Willis_          Date: _5-30-12_

**Documentation of Activity or remedial training:**

This evaluation was gone over with me with my training officer and supervisor.

Officers Signature _Ptl Gholston       0210_       Date: _05-30-12_

Revised November 2007

## CITY OF EAST CLEVELAND POLICE DEPARTMENT
## ORAL WARNING

To:  Ptl. Lakissa Gholston                                  Date: 1/1/2012

This is to serve as an oral warning for the following:   3.003- Reporting for Duty: On 12/31/11 Ptl. Gholston reported to work late for duty without calling ahead to advised the prior shift or your own shift. This was the second time Ptl. Gholston reported for duty late. Ptl. Gholston said that the reason for both dates was that she over slept

The following constitutes the measure(s) necessary to correct your deficiency: Ptl. Gholston you need to report to duty 15 minutes prior to shift starting. This is the second time that you use the excuse that you overslept and didn't make it to work on time. The first time your training officer had to call you to find out about your whereabouts. You need to make sure that you are on time prior to your shift starting
If you are late again you may be subject to progressive disciplinary action.

A COPY OF THIS REPRIMAND WILL BE PLACED IN YOUR SHIFT FILE

Officer-In-Charge _____ Date ___1/1/12___

I HEARBY ACKNOWLEDGE RECEIPT OF THE ABOVE.

Officer ___Ptl. Gholston___                Date __01-01-12__

The signing of this document does not constitute agreement, only that the document was shown to you and that you were provided with a copy.

Cc. Officer
    Cmdr. Wheeler

EXHIBIT
G

## CITY OF EAST CLEVELAND POLICE DEPARTMENT
## 0RAL REPRIMAND

**To: Lakessa Gholston**                                                                   Date: 11-08-2014

1. <u>**This is to serve as an oral reprimand for the following:**</u> Violation of East Cleveland Police **Department Rules and Regulations: 9.023, Neglect of duty:** On 11-08-2014, while conducting a jail check, you were dispatched to an emergency call of a shooting, and failed to retrieve you duty weapon, causing you to arrive at the call unarmed. You then failed to advise the road supervisor that you did not have your weapon one on scene.

2. <u>**The following constitutes the measure(s) necessary to correct your deficiency:**</u>

   In the future you are to make sure that you retrieve your weapon prior to leaving the station and immediately your supervisor if you fail to do so.

## <u>A COPY OF THIS REPRIMAND WILL BE PLACED IN YOUR SHIFT FILE</u>

Officer-In- Charge _____ Date __11-08-2014__

## I HEARBY ACKNOWLEDGE RECEIPT OF THE ABOVE.

Officer _____ Date __11-08-2014_____

The signing of this document does not constitute agreement, only that the document was shown to you and that you were provided with a copy.

Cc. Officer
    Shift File
    Patrol Commander

## EAST CLEVELAND POLICE DEPARTMENT
## DIVISION OF INTERNAL AFFAIRS
## OFFICER'S NOTICE

**To: Officer Lakessa Taylor**                              **Date: February 15th, 2017**

Notice is hereby given that Lieutenant intends to bring charges against you as a result of the following incident(s).

Violations of the following sections of the Rules/Regulations and Policy/Procedures governing the East Cleveland Division of Police:

1. 9.023: Conduct-Neglect of Duty
2. 9.032: Conduct-Standards of Conduct Policy
3. 9.032: Conduct-Jail/Holding Facility Policy

The members of the Pre-disciplinary Panel will conduct a hearing on the matter on Thursday February 23, 2017 at 0800 hours. The hearing will be held in room#215 of City Hall.

At this hearing, you may substantiate why you believe the proposed discipline is or is not justified. Should you decide to exercise your right to such a hearing, you may obtain the assistance of counsel and have him/her present, along with the assistance of any witness in your behalf. Also, you may present evidence at this hearing.

The investigating officer and/or supervisor taking disciplinary action will also have the opportunity to submit evidence and call witnesses to support the proposed action.

After the hearing, the disciplinary panel will consider the Evidence and Testimony submitted, and will make a recommendation to the Chief of Police. You will be provided with a copy of this recommendation.

This letter will be the only notification of this hearing. If there are any changes, you will be notified. In the absence of any extenuating circumstance, your statements, nor any information or evidence which is gained by reason of such statements, can be used against you in any subsequent criminal proceeding. However, these statements may be used against you in relation to subsequent departmental hearings.

Detective Reginald Holcomb
Internal Affairs Division

Cc: IAD/File

PRE-INTERVIEW GARRITY STATEMENT

I, _Latessa Taylor_ am giving the following statement by reason of an order from a superior officer, advising me that refusal to obey could result in disciplinary action. In view of possible job forfeiture, I have no alternative but to abide by this order. However, it is my belief and understanding that the Division of Police requires this statement solely and exclusively for internal administrative purposes; that it will be held as confidential and not released to any other agency without my approval unless mandated to do so by competent authority, or as necessary for disciplinary proceedings and appeals of such proceedings.

_L. Taylor_
OFFICER

_[signature]_
FOP STAFF REPRESENTATIVE

Because this is an administrative and not a criminal investigation, the Division of Police will not use any of the answers or information gained from the interview in any criminal proceeding against you. Further, the Division of Police will not release this information to any other agency without your approval and will hold it as confidential, except as mandated by an appropriate and competent authority or as necessary for disciplinary proceedings and appeals of such proceedings.

_[signature]_
INVESTIGATING OFFICER

_Detective_
RANK

Form M

# East Cleveland Police Department

Information

To:  *Michael Cardilli, Chief of Police*               Date:6/29/2018
From: *Scott P. Gardner, Commander*
Subject: Officer L. Taylor

Chief Cardilli,

## Summary

On 06/27/2018 at around 0700 hours a conversation took place with Sergeant Holcomb and myself relative to Officer Stephenson needing to be relieved at University Hospital.  Officer Stephenson was guarding prisoner Belle and has been there throughout the night.  Chief Cardilli and I had a meeting reference us having to watch the expenditure of overtime.  Attempting to mitigate that factor, I advised Sergeant Holcomb to have someone from the School Resource Officer Unit sit on the prisoner and relieve Officer Stephenson.  Using someone from the School Resource Officer unit was a logical choice in my mind, as school was out, and they without a specific assignment.

Sergeant Holcomb advised me that he would select the least senior officer of the unit.  I relayed to Sergeant Holcomb that I was indifferent to that decision, as long as someone was there to relieve Officer Stephenson.

At around 09:00 A.M. I was made aware by Investigator McDonald, that he would prefer if Officer King could be excused from the assignment, as she already had other commitments with third parties of the City. Officer King's regular duties are to follow up with the Carrington House reference missing juveniles.  She had such a meeting like that today.  I told Investigator McDonald to advise Officer Taylor to go to the hospital. Investigator McDonald relayed to me that he had, and that Officer Taylor stated she felt that because Officer King was "junior" (having less seniority) to her, that she should not have to go.  I relayed to Investigator McDonald to let Officer Taylor know that I was ordering her to relieve Officer Stephenson at the hospital.

Sometime later, Investigator McDonald returned advising that Officer Taylor stated that she was not going to the hospital and that she stated to him that, "... you might as well send me home."  I advised Investigator McDonald to tell Officer Taylor that I wished to speak with her in my office.

## Investigation

At 11:02 hours, Officer Taylor was interviewed in my office, in the presence of Commander Gerhard.  This interview was video recorded.

I just started out the interview by asking Officer Taylor what was going on.  She went through great lengths of explaining how she felt that she and Investigator McDonald did not get along, how she thought that she was being singled out, and how she felt that because Officer King was less-senior to her that it was King that should have to go to the hospital.

I went through at length explaining that it was no longer Investigator McDonald asking, that it was I that was ordering her to go.  I further explained that my decision was not based on anything personal, and even told why I felt Officer King needed to continue with her assignments.

Officer Taylor rebutted citing that she has been with the department for eight years, and that other than one other incident, how she had an exemplary record.

EXHIBIT
H

1

I asked Officer Taylor at least three different times if it was her prerogative not to obey my order. Each time she attempted to displace it back on me citing that "...if that is the decision you've made." I explained the only decision I had made was to order her to go to the hospital, that it was her that was refusing to do so.

After apparently seeing that she had no intention to follow the order I told her to place her badge and firearm on the desk. I said to her that she was suspended and would be contacted by the Chief's Office at a later time for her hearing.

She stood up and continued to express her dissatisfaction with "my decision." I asked her if I had ever treated her unprofessionally or otherwise and she indicated that I had not, and she asked the same question of me, and I told her up until this point, she had not. However, I was surprised by her unwillingness today.

## Recommendation

Officer Taylor's defense for not following the order was that she thought that she was being singled out. Numerous officers have been tasked over the course of Belles stay to watch the prisoner. This is not a task that is abnormal or out of line with the course of any officer's duties. This department has had the burden through great financial expenditure to guard this prisoner, and attempts were made to minimize the flowing of the overtime by having Officer Taylor's unit take over the duty. The order was both lawful, and ethical; there was no prior decision made to select Officer Taylor outside of her professional responsibilities.

An order given to subordinate personnel must be obeyed. It is the necessary foundation of the chain of command, and although no reason for such an order must be given to the officer, I still attempted to appease Officer Taylor with why I had made such an order. She still failed to obey.

It was evident that Officer Taylor understood the order and understood the order to be lawful.

Failure to pursue this charge with anything less than the gravest penalty would only open the door to other subordinates picking and choosing which orders they will obey. For this reason, I recommend Officer Taylor to a Mayor's Hearing with the following violation of the East Cleveland Police Rules and Regulations:

9.013- Conduct- Obedience to Orders (Class 1 offense)
9.023- Conduct- Neglect of Duty (Class 2 offense)

Attachments:

Form M from Investigator McDonald
Form M from Officer King
Form M from Sergeant Holcomb

Respectfully submitted,

S.P. Gardner, Commander

I LaKESSA TAYloR   Agree To the following

TeRms As A SettlemenT of my grievance @

1. $5,000.00 paid To me

2. ResigNATion IN Good STANding

3. NeuTRAl JoB Reference

4. This settlement HAs NO effecT on ANY
   FEOC Claim OR other
   Non-CBA ClAim(s).

L. Taylor
4/5/19

_Royal Oates_
FOP
5 APR '19

_William Collins_
City of East Cleveland
4/5/19

**EXHIBIT**
4

UL-05-2018 22:32 From:                                To:2166812650                    Page:1/1

# Fraternal Order of Police,
## Ohio Labor Council, Inc.

**MAIN OFFICE:**
222 East Town Street
Columbus, OH 43215-4611
(614) 224-5700
1-800-FOP-OLCI
Fax: (614) 224-5775

**NORTHEAST OFFICE:**
2721 Manchester Road
Akron, OH 44319-1020
(330) 753-7080
1-888-FOP-OLCI
Fax: (330) 753-8955

WWW.FOPOHIO.ORG

7/5/2018

SUBJECT: Officer Lakessa Taylor PreDisp Hearing

Dear Mayor King, and Chief Michael Cardilli,

Thank you for agreeing to extend the time limits regarding the pre-disciplinary hearing scheduled for Officer Taylor today at noon. As per Article 9 of the Current Agreement, the Union and the Employer are in full agreement to allow for this extension in hopes that we may come to some type of settlement with regard to discipline in this matter.

Thank you for your time,

Lucy DiNardo FOP/OLC Representative

Electronically Filed 02/07/2020 19:26 / MOTION / CV 20 927894 / Confirmation Nbr. 1938445 / CLSK1

Protector of the Protectors



# The City of East Cleveland

14340 EUCLID AVENUE • EAST CLEVELAND, OHIO 44112 • PHONE (216) 681-2265 • FAX (216) 681-26749

HUMAN RESOURCES DEPARTMENT

GARY A. NORTON JR.
MAYOR

TO
Employee.        Lakessa Gholston

FROM
Human Resources: Annamaria Smith, Director

CC:              Captain Wheeler & Chief Cardilli

December 18, 2014

On December 11, 2014 you hand delivered a letter to me expressing you have been treated unfairly due to your gender and have been placed in situations that were unsafe and against departmental policy.

The City of East Cleveland is committed to promoting a productive work environment in which every employee is treated with respect.  Harassment is defined as offensive or intimidating conduct of a verbal or physical nature, which has the purpose or effect of unreasonable interfering with an employee's working conditions or performance, creates a hostile, intimidating, or offensive work environment or otherwise adversely affects employment opportunities.

I immediately begin an investigation into the claims you listed in your notice me.  After completing the investigation my opinion was that a meeting with you and Sgt. Williams would be beneficial in reaching a mutually satisfying resolution.  The meeting on Tuesday, December 16, 2014 was attended by you, Sgt. Williams, Captain Wheeler, Chief Cardilli and myself.

Each of you were given the opportunity to hear each other's concerns, respond to those concerns and ask questions.  The Captain and Chief also provided valuable input.

Based on my investigation and the comments made during the meeting I've determined the following as it relates to the numbered concern  you submitted:

1. You cancelled the request instead of advising of the necessity of the additional support. This leads me to believe the situation may not have been as dangerous as made to believe.  It was not expressed in the meeting that the Sgt's question was against policy or procedure. (unsubstantiated)

2. The majority of this related to how Sgt. Williams manages his shift.  The Sgt does have the right to assign officers in the manner that he believes will produce the most efficient flow of work, however, not if it's done in a discriminatory manner.  Based on comments it was made clear that Sgt Williams believes there are some training that needs to take place for

EXHIBIT
J
PENGAD 800-631-6989



# The City of East Cleveland

14340 EUCLID AVENUE • EAST CLEVELAND, OHIO 44112 • PHONE (216) 681-2265 • FAX (216) 681-26749

HUMAN RESOURCES DEPARTMENT

GARY A. NORTON JR.
    MAYOR

you.  I did not perceive that to be discriminatory (unsubstantiated).  Sgt Williams conducting a shift meeting specifically about you and without your knowledge was absolutely unwarranted. (substantiated)

3.  & 4. Relate to operations, which is within Sgt. William's rights.

5   The Aux concern is being addressed by the Chief of Police.  There was also a previous conversation between you and the Chief of Police when you returned from a leave of absence regarding you riding alone.

6   Not discussed in any capacity at the meeting.  Again, this relates to how the shift is run.

7   Though Sgt Williams indicated he didn't recall making statements regarding how former Chief Spotts protected people and the implication that he has the support of the Captain and Chief of Police; it was made clear that any such comments were not appropriate. those comments certainly can be perceived to be intimidating regardless of the intent in which they may have been delivered.

8   Goes back to Sgt Williams managing the shift.  However, no employee should be spoken to in a derogatory manner.  This will be addressed by the Chief of Police.

9   Sgt Williams verbally advised you this item would be re-evaluated when the shift went to nights however in the meeting there were some work concerns all parties discussed.

In summation, there were some improprieties in the way communications were handled with you.  Training concerns should have been documented and carried out by Sgt Williams, fellow officers should not have been placed in the position of addressing your perceived training needs, and though Sgt. Williams has the authority to best manage his shift there should be transparency to avoid the appearance of impropriety or discriminatory practices.

At the conclusion of the meeting there was a moment when the air was cleared and you both expressed the respect you afford each other's position and apologies were made.  With a clear understanding by all involved it is my belief this matter will be resolved.  Going forward you are still encouraged to report any harassment and understand that no retaliation will occur for reporting the conduct.  It is my understanding either the Captain or Chief of Police will follow up with you as well.

*Working Together To Build A Better Community*
*www.eastcleveland.org*

To Whom It May Concern, I Officer Lakessa Gholston feel that I have treated unfairly due to my gender and have been placed in situations that were unsafe and against Departmental Policy.

I have come to this conclusion based on several incidents that have occurred while under the supervision of Sergeant Jeffery Williams. During this time I have seen departmental policies not adhered to and (or) rules and orders that only apply to me. In this letter I will give a few examples of my findings.

1. I was given a call to respond to a location for a suspicious vehicle. Upon responding to the call I realize that it was in the same location in which a homicide had occurs 1 week prior and that the location was unsafe for a one man unit. I then called for the assistance of car 3133 (which is was assigned to Officer Pearlmutter and the only available back up unit at that time) to respond to my location. After calling over the radio the dispatcher returned with "why do u need an additional unit". At that time I was being approached by several individuals behind the abandoned building. Finally Officer Peralmutter arrived on scene offering no assistance and behaving in an angry manner because he felt that I could have handle on without assistance. After returning to the station, I was advised by the dispatcher that Sergeant Williams told the dispatcher to ask why I needed assistance over the radio.

2. I was told we were no longer able to ride in a vehicle as a one man Unit Due to manpower and the fact that our shift was switching to night shift. Sgt. Williams stated all cars will be equipped with two officers. However I noticed that I was the only person who was not allowed to ride alone and inquired about it. I was then told that due to me being in the COP unit for so long that he believed that I didn't have enough training on shift to handle being in a one man car. I was then told that Sgt. Williams held a meeting with the other Officers on the shift. Telling them that he believes I should be demoted back to FTO and to document everything I did wrong using a Form M. these things would be used as evidence that I need more training.

3. We were dispatched to the Family Dollar for an armed robbery. Myself and Officer Dunlap responded to the area code 3 to do a check of the area for the suspect, then proceeded inside to speak with witnesses. We were on this call for approximately 10 minutes before Officer Pearlmutter (who was the only other car on the road at the time) finally finished taking information for a traffic crash and assisted. I and Officer Dunlap were told that we should have first responded to the store where I would be dropped off to preserve evidence while Dunlap searched for the armed suspect alone.

4. While still riding with Officer Dunlap we were given an assignment to take the keys from an inmate's property and respond to her home and search for her medication.

5. Sgt. Williams told me that I (being with the department over 3 years) was unable to ride alone due to lack of training, I observed an Officer who had been hired with the Department for less than two month ride as a one man unit several times. Sgt. Williams told me that the Officer is dating his daughter, and that he is the person who referred him to be hired. Not Ofc Tranaglia.

6. I was made to take reports where there was no report necessary. I was dispatched to a call to assist an elderly female with a disabled vehicle. Upon my arrival, I spoke with the lady who stated she had struck a pothole which caused damage to her vehicle. At that time she was on the phone with AAA and her son and nephew were in route to assist her. Upon their arrival, I was thanked for my assistance and advised that I was no longer needed. After I left, I returned to the station. Sgt. William told me to return to the female's location and take a report for

damage to her vehicle. Upon arriving at her home she told me that Sgt. Williams called her and told her to file a report and that a female officer would be responding to gather the information. The lady advised me that she was unable to determine if the pothole she struck was in the city of Cleveland or East Cleveland which is why she didn't request a report while I was on scene.

7. One morning out of roll call I was told to train Officer ~~NewGuy~~ *Trouble* on the jail policies and procedures. While inside the jail we received an emergency call and in my haste to respond I neglected to retrieve my handgun. I noticed the error while in the vehicle while in route to the call and in an attempt to correct my mistake I reached for the shotgun in my unit. I was given a written reprimand for not having my firearm on a call. While receiving the reprimand Sgt. Williams stated that former Chief Ralph Spotts was no longer employed here. I asked what did that mean and he stated that Spotts had the tendency to save officers and that he had full support of everyone up stairs. ( meaning Chief, Captain, lieutenant ) This comment was very intimidating, which made me afraid to report any misconduct or wrong doing for fear that they would support him and I would be fired from my position.

8. Officer Pearlmutter is not held to the same standard as the other officers on shift. All other officers are advised and expected to write citations and answer calls in a timely manner. Officer Pearlmutter has openly expressed that he will not comply and is not forced to do so. I have advised Sgt. Williams on two separate occasions that when angry, Oficer Pearlmutter swears at me and speaks to me as if I am below him. I have asked for Sgt. Williams to correct this issue to which he has not.

9. I submitted a Form M asking for a formal reason to which I was no longer allowed to ride as a one man unit like my male coworkers approximately three weeks ago. As of today (December 10, 2014) I have received no answer.

This is just a few incidents to which I feel I have been treated unfairly or that Departmental protocol was not followed. I have discussed this matter with other Officers on my shift who also agree that there are differences in the way I am treated by Sgt. Williams then the way they are. When speaking with my coworkers they expressed that I should take action however they are afraid that if they speak on my behalf, they will be next to be treated unfairly.

I am now coming forth with my complaint because the harassment is now starting to affect my health and safety. Because of the stress of being harassed and being placed in unnecessarily dangerous situations by Sgt. Williams, I have been diagnosed with high blood pressure. An illness which I never had before being under his supervision.

Chief.  I know that by now you are extremely disappointed in me and rightly do. I never ment any disrespect to my commander, department, and especially not my chief. I am dedicated and loyal to my job and community I serve. I never ment for this to happen. Disorder and disobedientce is not apart of my personality. Please except my humble apology.

EXHIBIT

K

PENGAD 800-631-6989

I am trying to log into ohleg

and having trouble.  I will keep





**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

### Court of Common Pleas

**BRIEF IN OPPOSITION**
February 14, 2020 16:45

By: JEFFREY MOYLE 0084854

Confirmation Nbr. 1944332

LAKESSA TAYLOR

vs.

CITY OF EAST CLEVELAND

CV 20 927894

Judge:  KELLY ANN GALLAGHER

Pages Filed:  7

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| LAKESSA TAYLOR | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. CV-20-927894 |
| | ) | |
| v. | ) | JUDGE KELLY ANN GALLAGHER |
| | ) | |
| CITY OF EAST CLEVELAND | ) | **MEMORANDUM IN OPPOSITION TO** |
| | ) | **DEFENDANT'S MOTION TO DISMISS** |
| Defendant. | ) | |
| | ) | |

## I.    INTRODUCTION

Plaintiff Lakessa Taylor ("Plaintiff") respectfully requests that this Honorable Court deny Defendant City of East Cleveland's ("Defendant's" or the "City's") Motion to Dismiss for Failure to State a Claim. The City's Motion to Dismiss is a confused and misguided attempt at doing an end-around the applicable Ohio pleading standards, which Plaintiff's Complaint easily meets. Indeed, the Eighth District recently confirmed that Ohio does not follow the federal *Iqbal/Twombly* standards that Defendant espouses, and that Ohio remains a notice pleading jurisdiction.

Defendant clearly has notice of Plaintiff's claims, because it attempts to argue the merits of Plaintiff's claims using nine exhibits it has attached to its Motion to Dismiss in a failed effort to refute Plaintiff's allegations – despite the fact that Defendant's brief expressly acknowledges the basic legal tenet that Courts must evaluate a motion to dismiss solely on the basis of the allegations in the Complaint.  Accordingly, the Court should disregard Defendant's "evidence" and deny the City's frivolous Motion to Dismiss.

## II.    LAW AND ARGUMENT

### A.    The Ohio Motion to Dismiss Standard.

A Civ.R. 12(B)(6) motion to dismiss "tests the sufficiency of a complaint." *Smiley v. City of Cleveland*, 8th Dist. Cuyahoga No. 103987, 2016-Ohio-7711, ¶ 5. For Plaintiff's Complaint to be dismissed, this Court would have to find that it is "beyond a doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief." *Id.*

Contrary to the representations the City makes in its Motion regarding the applicable legal standards (which, for some reason, are supported only by citations to cases from the United States Fifth Circuit Court of Appeals), our Appellate Court has held that "[i]t is important to note that Ohio has not adopted the heightened" *Iqbal/Twombly* federal pleading standards that the City urges the Court to follow. *Smiley*, 2016-Ohio-7711 at ¶ 5. "Instead, Ohio remains a notice pleading jurisdiction. As such, the standard requires that a plaintiff can show 'no set of facts' that entitle her to relief before a complaint is dismissed for failure to state a claim." *Id.* (citations omitted).

The Eighth District also held that "few complaints fail to meet the liberal [pleading] standards of Rule 8 and become subject to dismissal,' and that 'the motion to dismiss is viewed with disfavor and should rarely be granted.'" *Id.* at ¶ 6 (quoting *Slife v. Kundtz Properties, Inc.*, 40 Ohio App.2d 179, 182 (8th Dist.1974)). In addition, "[a] trial court's review of a Civ.R. 12(B)(6) motion to dismiss is limited to the four corners of the complaint along with any documents properly attached to or incorporated **within the complaint**." *Dean v. Cuyahoga Cty. Fiscal Office*, 8th Dist. Cuyahoga No. 107824, 2019-Ohio-5115, ¶ 15 (emphasis added). As none of the exhibits the City attached to its Motion to Dismiss were attached to or incorporated within the Complaint, the Court should disregard those improper exhibits.

**B.**     <u>Plaintiff Has Easily Met Her Pleading Burden.</u>

    **1.**     **Plaintiff Has Properly Pled A Gender Discrimination Claim.**

Defendant has not set forth any coherent argument to support its allegation that Plaintiff has not pled a claim for gender discrimination, other than some non-sensical argument that Plaintiff was not qualified to be a police officer, despite the fact that the City hired her and then employed her as a police officer for seven years. Regardless, all that is required to state a claim for gender discrimination is a "short and plain statement of [gender] discrimination showing [s]he is entitled to relief." *Morrissette v. DFS Servs., LLC*, 10th Dist. Franklin No. 10AP-633, 2011-Ohio-2369, ¶ 18. This is because the "notice pleading standard 'relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims,' and it 'should not be transposed into a rigid pleading standard for discrimination cases.'" *Id.* (quoting *Gessner v. Union*, 159 Ohio App.3d 43, 46-47 (2d Dist. 2004)).

R.C. 4112.02(A) makes it an unlawful employment practice for any employer "to discharge without just cause, to refuse to hire, or otherwise to discriminate against" a person because of her sex. In her Complaint, Plaintiff alleges that "when a male officer engages in misconduct, Defendant conducts extensive investigations that typically result in lenient punishment, regardless of the severity of the misconduct. On the other hand, when a female officer like Plaintiff is alleged to have engaged in misconduct, no investigation is conducted and she is immediately terminated." (*See* Complaint, ¶ 29). In support of this allegation, Plaintiff has pled facts demonstrating that the City routinely allows male officers to retain their employment after engaging in highly egregious and criminal misconduct, such as passing out drunk in an unmarked police car with a loaded firearm and then resisting arrest, or agreeing to let an inmate out of jail if the inmate will go on a date with the officer, but did not afford Plaintiff the same opportunity because of her gender. (*See*

Complaint, ¶¶ 18, 22-28). As such, the Complaint clearly contains a "short and plain statement" of gender discrimination that puts Defendant on notice to the nature of Plaintiff's allegations.

### 2.      Plaintiff Has Properly Pled A Retaliation Claim.

Plaintiff has also pled a "short and plain statement" of retaliation that would entitle Plaintiff to relief. Under R.C. 4112.02(I), it is an unlawful employment practice to "discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice...." In her Complaint, Plaintiff alleges that she complained to the City's Police Chief that his "right hand man" was harassing her because of her gender, and that Plaintiff was terminated shortly thereafter. (*See* Complaint, ¶¶ 17-19). In other words, Plaintiff has pled that after she complained about gender-based harassment (an unlawful discriminatory practice), her employment was terminated. As such, Plaintiff has clearly met her burden of setting forth a short and plain statement that she was terminated because she opposed the unlawful discriminatory practice of the being harassed because of her gender, and this claim should not be dismissed.

Defendant's Motion to Dismiss attempts to impose some imaginary burden on Plaintiff to provide evidence to support the allegations of her complaint at the pleading stage. (*See, e.g.*, Motion to Dismiss at pp. 12-13). But what Defendant fails to acknowledge is that in Ohio, "[c]ases are to be tried after discovery, and on the merits, not by pleadings." *Gessner v. City of Union*, 159 Ohio App.3d 43, 46 (2d Dist. 2004). Thus, Defendant's attempt to litigate this case before any discovery has taken place is not supported by the law, and should be rejected.

### 3.      Plaintiff Has Properly Pled A Hostile Work Environment Claim.

Finally, Defendant argues that Plaintiff has not pled a sexual harassment claim, although it is not entirely clear from its Motion to Dismiss the basis for this argument. Nevertheless, Plaintiff has clearly pled a hostile work environment claim. "[A] hostile work environment occurs when

a work atmosphere is so hostile to a protected class of individuals that it alters the conditions of the employment for individuals of that class." *Sheffield Village v. Ohio Civ. Rights Comm.*, 9th Dist. Lorain C.A. NO. 99CA007283, 2000 Ohio App. LEXIS 2381, at *18-19 (June 7, 2000). Here, Plaintiff has alleged that "male police officers repeatedly referred to women as 'whores' and bragged about their sexual experiences with women," that an Officer (who later became the Police Chief) attempted to force Plaintiff into his car and blocked her from leaving, saying that he wanted to "take her to a hotel room," and that another officer (*i.e.*, the Police Chief's "right hand man") was harassing Plaintiff because he did not want to work under a female officer's direction. (*See* Complaint, ¶¶ 12-17). Once again, Defendant clearly has notice of Plaintiff's claim, because it attempts to argue the merits of her claim before any discovery has taken place. Thus, Defendant's argument fails.

Defendant also makes the puzzling argument that Plaintiff's sexual harassment claim fails because she did not file a charge of sexual harassment with the EEOC. But what Defendant fails to understand is that Plaintiff's hostile work environment claim was brought under Ohio Revised Code Chapter 4112, not federal law. It is beyond dispute that "under federal law, a party must first file a claim with the EEOC before it can pursue a private action against an employer." *Dworning v. City of Euclid*, 8th Dist. Cuyahoga No. 87757, 2006-Ohio-6772, ¶ 15. "Ohio, on the other hand, does not require a filing with the OCRC as a prerequisite for pursuing a discrimination claim directly in court." *Id.* at ¶ 16. Accordingly, Plaintiff was not required to file a charge, and Defendant's argument fails.[1]

---

[1] Defendant also makes a passing allegation that Plaintiff settled and released her claims against the City. However, the document the City attached to its Motion to Dismiss to support this allegation clearly states that "this settlement has <u>NO</u> effect on any EEOC claim or other non-CBA claim(s)." (*See* Exhibit I to Defendant's Motion to Dismiss, emphasis in original). Thus, it is clear

III.     **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court deny

Defendant's Motion to Dismiss.

Respectfully submitted,

**NILGES DRAHER LLC**

*/s/ Jeffrey J. Moyle*
Jeffrey J. Moyle (0084854)
Christopher J. Lalak (0090079)
614 West Superior Avenue
Suite 1148
Cleveland, Ohio 44113
Telephone:     216.230.2955
Email:           jmoyle@ohlaborlaw.com
                   clalak@ohlaborlaw.com

*Counsel for Plaintiff*

---

that, as it says at the top of that document, the settlement was of her grievance only, not of any
statutory or other claims she may have against the City.

## CERTIFICATE OF SERVICE

This is to certify that on February 14, 2020, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Jeffrey J. Moyle*
Jeffrey J. Moyle

*One of the Attorneys for Plaintiff*